**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DANIELLE PALLOTTA and CHERYL LAFLAMME, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CENTER, KRONOS INCORPORATED, and UKG INC.,<br><br>        Defendants. | Civil Action No. 4:22-cv-10361-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

Table of Authorities ...................................................................................................... ii

I.    BACKGROUND .................................................................................................. 3

    A.    Procedural History ................................................................................. 3

    B.    Background Facts.................................................................................... 3

II.   TERMS OF THE SETTLEMENT ...................................................................... 5

    A.    The Settlement Awards.......................................................................... 6

    B.    Service Awards to Plaintiffs ................................................................. 6

    C.    Plaintiffs' Counsel's Fee Award and Settlement Administrator's Costs............... 7

    D.    Special Provision Regarding Taxes ...................................................... 8

III.  ARGUMENT ...................................................................................................... 8

    A.    The Proposed Settlement Class Satisfies Rule 23................................ 8

        1.    Numerosity .................................................................................. 9

        2.    Commonality............................................................................... 9

        3.    Typicality.................................................................................... 9

        4.    Adequacy .................................................................................. 10

        5.    Predominance ........................................................................... 11

        6.    Superiority................................................................................. 11

    B.    Collective Action Treatment is Appropriate Pursuant to 29 U.S.C. § 216(b) ...... 12

    C.    The Proposed Settlement Agreement Is
Fair, Reasonable, And Adequate, Warranting Preliminary Approval ................. 13

        1.    Plaintiffs And Counsel Have Adequately Represented The Class. .......... 15

        2.    The Settlement Agreement Was Negotiated At Arm's Length. ............... 16

        3.    The Settlement Affords Adequate Relief For the
Class In Light Of The Facts, Risks, and Costs Of Litigation. ................. 16

    D.    The Proposed Notice Is Adequate And Appropriate. ......................... 19

IV.   CONCLUSION................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Anderson v. Team Prior, Inc.*,
   No. 19-452, 2022 U.S. Dist. LEXIS 196144 (D. Me. Oct. 28, 2022) .................................. 12

*Anstead v. Ascension Health*,
   No. 22-2553, (N.D. Fla.) ................................................................................................. 2, 15

*Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*,
   404 F. Supp. 3d 486 (D. Mass. 2018) ................................................................................. 10

*Beckman v. Keybank N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................................... 14

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass.) *aff'd* 809 F.3d 78 (1st Cir. 2015) ........................................... 7

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015) .................................................................................................. 13

*Crowe v. ExamWorks, Inc.*,
   136 F. Supp. 3d 16 (D. Mass. 2015) ........................................................................... 9, 10, 11

*Drake v. Tufts Assoc. HMO, Inc.*,
   No. 19-11876, 2021 U.S. Dist. LEXIS 125814 (D. Mass. Feb. 12, 2021) ............................ 12

*Espinoza v. 953 Assocs. LLC*,
   280 F.R.D. 113 (S.D.N.Y. 2011) ......................................................................................... 10

*Gardner v. Fallon Health & Life Ins. Co.*,
   No. 19-40148, 2021 U.S. Dist. LEXIS 186573 (D. Mass. Sept. 29, 2021) ..................... 12, 13

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................................. 8, 9, 13

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) .............................................................................................. 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ............................................................................................ 13, 16

*In Re UKG Inc. Cybersecurity Litigation*,
   No. 22-00346 (N.D. Cal. Jan. 18, 2022).............................................................................. 1

*Jean-Pierre v. J&L Cable TV Servs.*,
   538 F. Supp. 3d 208 (D. Mass. 2021) .................................................................. 10, 14, 18, 19

*Johnson v. VCG Holding Corp.*,
   802 F. Supp. 2d 227 (D. Me. 2011) ..................................................................................... 12

*Klapatch v. BHI Energy I Power Servs., LLC,*
    No. 18-11581, 2019 U.S. Dist. LEXIS 28134 (D. Mass. Feb. 22, 2019) ............................... 12

*Lauture v. A.C. Moore Arts & Crafts, Inc.,*
    No.17-10219, 2017 U.S. Dist. LEXIS 87928 (D. Mass. June 8, 2017) ................................... 7

*Lavin v. University of Massachusetts Memorial Medical Center,*
    No. 2285-00056, (Mass. Sup. Ct.) ................................................................................................ 1

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards
Admin., Wage & Hour Div.,*
    679 F.2d 1350 (11th Cir. 1982) ................................................................................................ 14

*McLaughlin v. Liberty Mut. Ins. Co.,*
    224 F.R.D. 304 (D. Mass. 2004) ................................................................................................ 11

*Mysliewic v. UKG, Inc., and UMass Memorial Medical Center, Inc.*
    No. 22-40083 (D. Mass.) ................................................................................................................ 1

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.,*
    247 F.R.D. 253 (D. Mass. 2008) ............................................................................................ 9, 10

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,*
    582 F.3d 30 (1st Cir. 2009) ........................................................................................................ 13

*Nat'l Ass'n of the Deaf v. Mass. Inst. Of Tech.,*
    No. 15-30024, 2020 U.S. Dist. LEXIS 53643 (D. Mass. Mar. 27, 2020) ............................. 16

*O'Donnell v. Robert Half Int'l, Inc.,*
    534 F. Supp. 2d 173 (D. Mass. 2008) ..................................................................................... 8, 9

*Otte ex. rel. Estate of Reynols v. Life Ins. Co. of N. Am.,*
    275 F.R.D. 50 (D. Mass. 2011) ................................................................................................. 11

*Overka v. Am. Airlines Inc.,*
    265 F.R.D. 14 (D. Mass. 2010) .................................................................................................... 9

*Prescott v. Prudential Ins. Co.,*
    729 F. Supp. 2d 357 (D. Me. 2010) ........................................................................................... 12

*Roberts v. TJX Cos.,*
    No. 13-13142, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) .......... 14, 17, 18, 19

*Robinson v. Nat'l Student Clearinghouse,*
    14 F.4th 56 (1st Cir. 2021) ........................................................................................................ 16

*Scovil v. FedEx Ground Package Sys.,*
    No. 10-515, 2014 U.S. Dist. LEXIS 33361 (D. Maine Mar. 14, 2014) .................................... 7

*Smilow v. Sw. Bell Mobile Sys., Inc.,*
    323 F.3d 32 (1st Cir. 2003) .................................................................................................... 8, 11

iii

*Stevens v. PepsiCo Inc.*,
   No. 22-00802 (S.D.N.Y.) ............................................................................... 2, 15

*Swack v. Credit Suisse First Bos.*,
   230 F.R.D. 250 (D. Mass. 2005) ....................................................................... 10

*Torrezani v. VIP Auto Detailing, Inc.*,
   318 F.R.D. 548 (D. Mass. 2017) ......................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................... 9

*Ward v. UKG, Inc., UMass Memorial Health Care, Inc., and UMass Memorial Medical Center, Inc.*,
   No. 22-40084 (D. Mass.) ..................................................................................... 1

## **Statutes**

Federal Rule of Civil Procedure 23 ..................................................... *passim*

29 U.S.C. § 216 ...................................................................................... 1, 12

29 U.S.C. §§ 201 *et seq.* ....................................................................... 3, 5

Fair Labor Standards Act § 16 ...................................................................... 1

## **Other**

Manual for Complex Litigation (Fourth) § 13.14 (2004) ........................... 13

Plaintiffs[1] Danielle Pallotta, Cheryl LaFlamme, Sandra Bravo, Melissa Lavin, Michelle

Lemieux, Catherine Mysliewic, and Tanya Ward (the "Plaintiffs") respectfully submit this

memorandum in support of their motion for preliminary approval of a proposed settlement in this

case pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). This motion pertains to the

settlement of Plaintiffs' claims against the Defendants UMass Memorial Medical Center, Inc.

("UMMMC") and UMass Memorial Health Care, Inc. ("UMMHC") (collectively the "UMass

Defendants").[2] If approved, this Settlement will resolve the claims of Plaintiffs, employees who

opt-in to a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 216(b), (the "Collective"), and a class of employees under Rule 23 (the "Class") against

the UMass Defendants for issues relating to the data breach that occurred in or around December

11, 2021, and resulted in improper payments to the UMass Defendants' employees ("Data

Breach"). The Plaintiffs', the Collective's and the Class's claims against Defendants Kronos

Incorporated and UKG, Inc. (hereinafter the "UKG Defendants") will remain.[3]

---

[1] This Motion intends to resolve the claims of Plaintiffs Danielle Pallotta and Cheryl LaFlamme, as well as those brought or intended to be brought by Plaintiffs Melissa Lavin, Michelle Lemieux, Catherine Mysliewic. Tanya Ward, and Sandra Bravo in either the U.S. District Court for the District of Massachusetts or Massachusetts state court. *See Lavin v. University of Massachusetts Memorial Medical Center*, No. 2285CV00056C (Mass. Sup. Ct.); *Ward v. UKG, Inc., UMass Memorial Health Care, Inc., and UMass Memorial Medical Center, Inc.*, No. 22-40084 (D. Mass.); and *Mysliewic v. UKG, Inc., and UMass Memorial Medical Center, Inc.*, No. 22-40083 (D. Mass.) (the "Related Lawsuits").

[2] A copy of the Settlement and Release Agreement (the "Settlement" or "Settlement Agreement") that has been executed by the Plaintiffs and the UMass Defendants has been filed with the Court as Exhibit 1 to the Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.").

[3] The UKG Defendants settled certain claims held by class members as part of a settlement. reached in *In Re UKG Inc. Cybersecurity Litigation*. *In Re UKG Inc. Cybersecurity Litigation*, Case No. 22-00346 (N.D. Cal. Jan. 18, 2022). Dkt. No. 68. That settlement provides most class members with an average of less than $1.00. In part due to the insistence of Plaintiffs' counsel, the UKG settlement does not prevent Class Members from continuing seeking recovery for the harms caused by UKG's actions. Plaintiffs intend to file an amended complaint against UKG for the damages not covered by the instant settlement and the settlement in *In Re UKG Inc. Cybersecurity Litigation*. *Id.*

After substantial investigation, informal discovery, and lengthy settlement negotiations, including a mediation with the Honorable Diane M. Welsh (ret.), the Plaintiffs and the UMass Defendants (collectively, the "Parties") reached an agreement to settle the Plaintiffs', the Collective's and the Class's claims against the UMass Defendants. Plaintiffs and the UMass Defendants believe the Settlement represents a reasonable compromise that takes into account the strengths and weaknesses of the parties' respective positions and the risks and costs of continued litigation, including a trial and any appeals. Indeed, this settlement compares favorably to similar settlements resulting from the Data Breach. *See, e.g.*, *Stevens v. PepsiCo Inc.*, No. 22-00802 (S.D.N.Y.), ECF No. 73 (preliminarily approving a settlement that paid employees a lower percentage of their maximum damages than in this case); *Anstead v. Ascension Health*, No. 22-2553, ECF No. 31 (N.D. Fla.) (same).

Accordingly, Plaintiffs respectfully request the Court enter an order substantially in the form as attached to the Settlement, which: (1) grants preliminary approval of the proposed Settlement; (2) confirms that the "FLSA Collective" shall be defined as all hourly employees of the UMass Defendants who did not receive timely payment of wages as a result of the Data Breach and who consent to join this settlement by completing and returning a valid and timely FLSA Consent Form; (3) confirms that "Massachusetts Wage Act Class" shall be defined as all hourly employees of UMass Memorial Medical Center, Inc. and/or UMass Memorial Health Care, Inc. who did not receive timely payment of wages as a result of the Data Breach; (4) confirms Danielle Pallotta, Cheryl LaFlamme, Sandra Bravo, Melissa Lavin, Michelle Lemieux, Catherine Mysliewic and Tanya Ward as class representatives; (5) confirms Finkelstein, Blankinship, Frei-Pearson & Garber, LLP; Sheff & Cook, LLC; and Gordon Law Group, LLP as Class Counsel; (6) confirms the appointment of CAC Services Group, LLC as the Settlement

Administrator; (7) approves the parties' proposed Notice Packet to the Putative FLSA Collective and Massachusetts Wage Act Class; (8) directs that such Notice Packet be sent to the Collective Members and Class Members; and (9) schedules further proceedings, including deadlines and a hearing at which time the Court will consider the parties' request for final settlement approval.

## I.    BACKGROUND

### A.    <u>Procedural History</u>.

On March 9, 2022, Plaintiffs Danielle Pallotta and Cheryl LaFlamme commenced this litigation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the Massachusetts Wage Act on behalf of themselves, and on behalf of all current or former non-exempt employees of UMass Defendants, who worked in the United States at any time during the onset of the Data Breach.[4]

The UMass Defendants deny any wrongdoing or legal liability.  The UMass Defendants further assert that they have valid defenses to each and every claim made by Plaintiffs.  Despite the parties' respective positions, the parties participated in an informal exchange of documents and a mediation with an experienced mediator, Ret. Judge Diane Welsh, of JAMS.

### B.    <u>Background Facts</u>.

Plaintiffs bring this class action on behalf of themselves and current and former employees of Defendants to recover actual damages and compensation for harms caused by the UMass Defendants' failure to timely and properly pay wages and wrongful disclosure of Plaintiffs', Collective's, and Class members' highly sensitive personally identifiable information ("PII") to

---

[4] On or about December of 2021, the UKG Defendants, the timekeeping provider for the UMass Defendants, began experiencing a cybersecurity incident and as a result the UMass Defendants were unable to accurately pay the Collective members and the Class members.

cyber-thieves.  Plaintiffs and Class members provided the UMass Defendants with PII, including social security numbers and other financial information about their spouses and dependents, as a condition of their employment.  On or about December 11, 2021, due to the UKG Defendants' insufficient computer security policies and practices, cybercriminals accessed its employee payroll systems and the private, sensitive PII stored therein (the "Data Breach").  Furthermore, the UMass Defendants' online payroll system was rendered unusable for more than a month.

Plaintiffs and putative Class Members have been directly harmed by the Data Breach. Among other injuries, Plaintiffs and Class Members were not timely paid the full amount of wages to which they were entitled.  Following the Data Breach, the UMass Defendants instituted a "payment freeze" for all hourly employees because their payroll system was rendered unusable by the Data Breach.  As part of the payment freeze, the UMass Defendants set the hourly employees' wages following the Data Breach to the amount of time that the respective employee worked in the pay period immediately prior to the Data Breach.  The UMass Defendants applied this amount of time to multiple pay periods through December 2021 and January 2022 until the Kronos payroll system was usable.  For example, an employee who worked 10 hours in the pay period prior to the Data Breach, but worked 40 hours in each successive pay period in December 2021 and January 2022, was paid for 10 hours worked in each pay period during the payment freeze.  As a result of this pay freeze, the Plaintiffs, the Collective Members and the Class Members did not receive their wages in a timely fashion.

In the months after the pay freeze, the UMass Defendants repaid employees for improper payments following the Data Breach.  The UMass Defendants contend that they have not

violated the FLSA or the Massachusetts Wage Act.  The UMass Defendants also contend that they properly paid those non-exempt hourly workers for all of the time they worked.

## II.      TERMS OF THE SETTLEMENT

Under the Settlement Agreement, the UMass Defendants agree to fund an all-in payment of $1.2 million, from which direct payments will be made for Collective members who opt-in, and for Class members who do not file exclusions (collectively, the "Claimants"), attorneys' fees and litigation costs, settlement administration costs, mediation fees, and service award payments. Settlement and Release Agreement ("Settlement Agreement"), pg. 6.  The Claims Administrator shall allocate the amount in the Net Settlement Fund among eligible Class and Collective Members in proportion to each member's approximate potential damages.  All Claimants shall receive a minimum payment of $50.00.

The Parties have selected CAC Services Group, LLC ("CAC") as the settlement administrator.  *Id.*, pg. 4.  CAC is an experienced, qualified administrator in the business of efficiently processing class action settlements.  Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl."),  ¶ 21.  CAC shall receive, review, and approve or reject Claim Forms pursuant to the standards and procedures set forth in the Settlement Agreement.  *Id.*  ¶ 22.

The FLSA Collective consists of "all hourly employees of UMass Memorial Medical Center, Inc. and/or UMass Memorial Health Care, Inc. who, according to Defendants' records, did not receive timely payment of wages as a result of the Data Breach, and who consent to join this settlement by completing and returning a valid and timely FLSA Consent Form."  The Massachusetts Wage Act Class consists of "all hourly employees of UMass Memorial Medical Center, Inc. and/or UMass Memorial Health Care, Inc. who, according to Defendants' records, did not receive timely payment of wages as a result of the Data Breach."  The Collective and the

Class largely overlap.  While the exact number of class members is currently unknown, the Plaintiffs estimate, that the FLSA Collective and the Massachusetts Wage Act Class contain approximately 3,178 members who would be entitled to receive payment under the Settlement.

A.    **The Settlement Awards**.

Following any deductions allowed by the Court for fees, expenses and the service award to the Plaintiffs, the Settlement Agreement provides that the remaining Settlement Fund be distributed on a *pro rata* basis to the Collective and the Class.  The portion of the Settlement Fund to which each such Claimant is then entitled – the Individual Settlement Payment – will be made on a *pro rata* basis, made in proportion to each such Class Member and Collective Member's approximate potential damages.  Specifically, each Class Member and Collective Member's share of the Settlement Fund (the "Individual Settlement Payment") shall be calculated using the following formula:  amount of the Class Member and Collective Member's individual damages divided by the total amount of the Settlement Fund, multiplied by the total amount of the remaining Settlement Fund.  Each Class Member is entitled to a minimum of $50, and the average award is approximately $245.

B.    **Service Awards to Plaintiffs**.

As set forth in the Settlement Agreement, at the final approval stage, after Class Members have had a chance to object, Plaintiffs' Counsel will request individual incentive awards of $8,500 each for each of the Plaintiffs, for their substantial individual contributions and efforts to the prosecution of this class action litigation.  The Plaintiffs worked diligently and extensively with Plaintiffs' counsel throughout this litigation, including gathering information pertaining to the factual allegations of the Complaint and other putative Class Members' experiences, participating in the informal discovery process, and assisting in the settlement process by

participating in a lengthy mediation session.  Absent these efforts, the significant Settlement

Awards paid to the Collective and Class would not be possible.  The $8,500 incentive awards

requested here are also consistent with awards authorized in numerous reported case decisions,

especially given the specific circumstances of this case.[5]

> **C.**    **Plaintiffs' Counsel's Fee Award and Settlement Administrator's Costs**.

As set forth in the Settlement Agreement, at the final approval stage, after Class Members

have had a chance to object, Plaintiffs' Counsel will submit an application along with the Parties'

Motion for Final Approval, or at an earlier time if the court so requests, seeking reimbursement

of Counsel's out-of-pocket costs.  In addition, Plaintiffs' Counsel will submit an application for

attorneys' fees of up to one third (1/3) of the Settlement Amount, or $400,000, an amount

consistent with both the percentage of common fund method permitted for determining

attorneys' fees in class action settlements.  After soliciting competing estimates from claims

administrators, the parties have engage CAC Services Group, LLC, a well-respected claims

administrator that provided the most cost-effective estimates, to handle the notice, claims and the

distribution process.  Frei-Pearson Decl., ¶ 20.

---

[5] "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall."  *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd* 809 F.3d 78 (1st Cir. 2015).  "In wage and hour cases, 'awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher.'"  *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-10219, 2017 U.S. Dist. LEXIS 87928, at *5-6 (D. Mass. June 8, 2017) (approving service awards of $15,000 to named plaintiffs in an FLSA collective action) (quoting *Scovil v. FedEx Ground Package Sys.*, No. 10-515, 2014 U.S. Dist. LEXIS 33361, at *6 (D. Maine Mar. 14, 2014); *Scovil*, 2014 U.S. Dist. LEXIS 33361, at *6 (approving service awards of $20,000, $15,000, and $10,000 for name plaintiffs in an FLSA collective action).

### D.    <u>Special Provision Regarding Taxes</u>.

As this matter concerns liquidated damages, the Individual Settlement Payments to the Collective Members and Class Members will be classified as liquidated damages.  The Individual Settlement Payments shall not be subject to withholding and shall be reported to the IRS on a Form 1099.

## III.    ARGUMENT

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  In order for the Court to grant approval, the Court must first "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *Id.*

### A.    <u>The Proposed Settlement Class Satisfies Rule 23</u>.

"To obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)."  *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 102 (D. Mass. 2010) (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)).  Rule 23(b)(3)'s requirements are met "if a) 'the questions of law or fact common to class members predominate over any questions affecting only individual members' and b) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 183 (D. Mass. 2008) (quoting FED. R. CIV. P. 23(b)(3)).  Each of these requirements is readily met here.

### 1.    Numerosity

"In order to satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiff must demonstrate that 'the class [would be] so numerous that joinder of all members is impracticable." *Hochstadt*, 708 F. Supp. 2d at 102 (quoting FED. R. CIV. P. 23(a)(1)). However, courts commonly treat a proposed class of at least forty members as meeting the numerosity requirement of this rule. *See, e.g.*, *Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 553 (D. Mass. 2017). Here, the proposed Collective and Class is more than 3,000 individuals. As such, joinder is clearly impracticable and numerosity is established.

### 2.    Commonality

Commonality "has been described as a 'low hurdle,' requiring 'a single common legal or factual basis,' the Supreme Court has emphasized that commonality requires some 'demonstrat[ion] that class members have suffered the same injury' based on a 'common contention . . . capable of class wide resolution.'" *Crowe v. ExamWorks, Inc.*, 136 F. Supp. 3d 16 (D. Mass. 2015) (quoting *O'Donnell*, 534 F. Supp. 2d at 183 and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). The commonality requirement is satisfied where implementation of a common scheme is alleged. *Overka v. Am. Airlines Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010). In this case, the Collective and Class members were subjected to the same pay freeze on account of the Data Breach. Questions pertaining to when this pay freeze occurred and whether this pay freeze was lawful, are classic common questions of the type contemplated by Rule 23(a)(2).

### 3.    Typicality

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D.

253, 264 (D. Mass. 2008) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Plaintiffs must demonstrate that they "show substantial identity and 'share essential characteristics' with the class overall" and that "the relief the named plaintiffs seek is the same as that sought by the class overall[.]" *Crowe*, 136 F. Supp. 3d at 48 (citing *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 260 (D. Mass. 2005) and *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011)). Here, Plaintiffs advance a claim that the pay freeze instituted by the UMass Defendants for all hourly workers injured them and all Collective and Class members, because it resulted in a late payment of wages for all hours. There is no material variation between the claim of Plaintiffs and the claims of Collective or Class members.

### 4. Adequacy

"To be adequate, a class representative must, at minimum, have: (1) 'the ability and incentive to represent the interests of the class vigorously,' (2) 'obtained adequate counsel,' and (3) 'no conflict between [his or her] claims and those asserted on behalf of the class.'" *Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (quoting *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 508 (D. Mass. 2018)). Here, there is no conflict between Plaintiffs and the Collective and Class. All seek to recover damages resulting from unpaid and untimely paid wages following the Data Breach. The named Plaintiffs assisted Plaintiffs' counsel in preparing complaints, investigating their claims, and preparing for mediation. Accordingly, the adequacy prong is satisfied. Likewise, Plaintiffs' counsel are experienced in prosecuting complex class actions nationwide, in both state and federal courts, including wage-and-hour violations. *See* FBFG Firm Resume, Ex. 2 to Frei-Pearson Decl.; Declaration of Phillip J. Gordon; Declaration of Kathy J. Cook. Thus, Plaintiffs' counsel is capable of fairly and adequately representing the Class.

### 5.    Predominance

"Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39.  "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria -- thus rendering unnecessary an evidentiary hearing on each claim." *Id.* at 40.

In this case, the predominance requirement is satisfied because the Plaintiffs are challenging one uniform policy – a pay freeze for all hourly workers during the Data Breach – and common answers would determine the outcome of the litigation at a trial.  In cases like this one, only the damage analysis varies from class member to class member, and this is generally not sufficient to preclude a finding of predominance.  *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 312 (D. Mass. 2004) ("The amount of damages for each individual class member will ultimately require some individual proof, but administration of these individual claims will be straightforward and these individual questions do not predominate over the common questions identified above.").

### 6.    Superiority

"Considerations of efficiency and judicial economy drive the assessment of superiority of a class action." *Crowe*, 136 F. Supp. 3d at 48 (quoting *Otte ex. rel. Estate of Reynols v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 58 (D. Mass. 2011)).  Resolution of Plaintiffs' and the Class's claims in a single action, as opposed to more than 3,000 individual actions requiring consideration of the same legal issues, is a superior method of adjudicating the Class's claims. Superiority is satisfied here, where all of the Plaintiffs and the UMass Defendants have agreed consolidate this Lawsuit and the Related Lawsuits in an effort to resolve all pay issues related to

the Data Breach.  This effort will clearly promote uniformity of decision as to multiple actions

brought in Massachusetts pertaining to these events.

**B.**     **Collective Action Treatment is Appropriate Pursuant to 29 U.S.C. § 216(b)**.

"Although the First Circuit has not prescribed a specific procedure, most district courts in

the circuit, . . .  employ a 'two-tiered' approach in determining FLSA collective action

certification." *Anderson v. Team Prior, Inc.*, No. 19-452, 2022 U.S. Dist. LEXIS 196144, at *9

(D. Me. Oct. 28, 2022).  "First, the court 'determines whether notice should be given to potential

collective action members.'" *Id.* (quoting *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227,

233 (D. Me. 2011)).  "To pass this first step, a plaintiff must simply demonstrate 'a reasonable

basis for [his] claim that there are other similar situated employees.'" *Id.* at *9-10 (quoting

*Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010)) (alteration in original).

The FLSA "requires only that collective action plaintiffs be similarly situated.  Thus, the FLSA

allows plaintiffs to proceed collectively based on a lesser showing than that required by Rule

23." *Klapatch v. BHI Energy I Power Servs., LLC*, No. 18-11581, 2019 U.S. Dist. LEXIS

28134, at *3 (D. Mass. Feb. 22, 2019) (quoting *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d

357, 359 (D. Me. 2010)).  Plaintiffs need only demonstrate that they "and other employees, with

similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." *Id.*

at *4 (quoting *Prescott*, 729 F. Supp. 2d at 364).  Similar claims on behalf of hourly employees

in the health care industry in Massachusetts have been certified as collective actions under these

standards.  *See Drake v. Tufts Assoc. HMO, Inc.*, No. 19-11876, 2021 U.S. Dist. LEXIS 125814,

at *11-13 (D. Mass. Feb. 12, 2021) (granting conditional certification for an FLSA collective of

hourly employees who were subject to the uniform policy of failing to pay overtime for exempt

employees); *Gardner v. Fallon Health & Life Ins. Co.*, No. 19-40148, 2021 U.S. Dist.

12

186573, at *10-11 (D. Mass. Sept. 29, 2021) (same).

Here, the collective is similarly situated because all hourly employees at UMass were subject to the same uniform policy: UMass instituted a payment freeze on December 13, 2021, which set the wages that Plaintiffs and the collective received based upon the hours they worked in the pay period prior to December 13, 2021.  This uniform policy operated in the same manner on all hourly employees at UMass and is suitable for collective treatment.  The parties submit that for purposes of settlement, this matter meets the requirements for collective action treatment much as it does for class certification.

 **C. The Proposed Settlement Agreement Is Fair, Reasonable, And Adequate, Warranting Preliminary Approval**.

"[B]efore making a final decision on the 'approval' of a settlement, a court must first make a 'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'"  *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 106-07 (D. Mass. 2010) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2004)).  "Under Federal Rule of Civil Procedure Rule 23(e)(2), a class action settlement must be 'fair, reasonable, and adequate.'  The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'"  *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)).  "If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."  *Id.* (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)).

The factors the Court must consider are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 212-13 (D. Mass. 2021) (quoting FED. R. CIV. P. 23(e)(2)).

"A court may approve an FLSA settlement upon a finding that all parties to the action have agreed to it, and that represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.' A court's review of a FLSA settlement, however, is slightly less demanding than its review of a Rule 23 class action settlement because, unlike a Rule 23 class action, a FLSA collective action settlement does not bind absent class members." *Roberts v. TJX Cos.*, No. 13-13142, 2016 U.S. Dist. LEXIS 136987, at *19 n.7 (D. Mass. Sept. 30, 2016) (Burroughs, J.) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. Keybank N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (citing *Lynn's Food Stores*, 679 F.2d at 1353-54).

It is undisputed that this case presents a bona fide dispute. Plaintiffs claim that they were not properly compensated for all hours worked during the Data Breach. Conversely, the UMass Defendants maintain that they have properly compensated Plaintiffs during this timeframe. Thus, the Parties disagree on whether Plaintiffs were compensated properly and whether any back wages and liquated damages are owed, creating a bona fide dispute.

        1.      Plaintiffs And Counsel Have Adequately Represented The Class**.**

Plaintiffs have adequately represented the Class. But for the courage and initiative of Plaintiffs in bringing this lawsuit, the Settlement Agreement benefitting the Class would not have been reached. Plaintiffs helped to prepare their pleadings, gathered and produced relevant materials for informal discovery, and assisted Plaintiffs' counsel in preparation for the mediation resulting in settlement. *See* Frei-Pearson Decl., ¶ 14.

With respect to Plaintiffs' Counsel, "the focus . . . is on the actual performance of counsel acting on behalf of the class." FED. R. CIV. P. 23(e)(2)(A) advisory committee's note. Here, Plaintiffs' counsel relied on their experience in prosecuting complex class actions nationwide, in both state and federal courts, including wage-and-hour violations to investigate the claims of Plaintiffs and the class and reach a Settlement that yields damages for Plaintiffs and the Class that surpasses damages for similar settlements arising out of the Data Breach. *See, e.g.*, *Anstead v. Ascension Health*, No. 22-2553, ECF No. 31 (N.D. Fla.) (resulting in a settlement of $3.74 million in liquidated damages, where the employer previously repaid $3.74 million for underpayments);, *Stevens v. PepsiCo*, No. 22-00802, ECF No. 58 (S.D.N.Y.) (resulting in a settlement of $12.75 million in liquidated damages, where the employer previously repaid $23 million for underpayments). Here, the settlement fund provides $1.2 million for liquidated damages, larger than the less than $1 million in underpayments that would be compensable under the FLSA.

### 2.    The Settlement Agreement Was Negotiated At Arm's Length.

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of the Deaf v. Mass. Inst. Of Tech.*, No. 15-30024, 2020 U.S. Dist. LEXIS 53643, *11 (D. Mass. Mar. 27, 2020) (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 33); *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 58-59 (1st Cir. 2021) (affirming decision granting final approval of the class settlement and the district court's finding that the "parties negotiated at arm's length" because the parties conducted a mediation before the Honorable Diane M. Welsh (ret.)).

Here, the parties engaged in arm's-length and good-faith negotiations and reached a mutually agreeable settlement after a mediation with the Honorable Diane M. Welsh (ret.) and each party made several settlement proposals.  The parties exchanged relevant information to enable an accurate assessment of the merits of Plaintiffs' claims.  Plaintiffs have fully considered the merits and potential value of their claims and determined that the proposed settlement provides a reasonable and fair resolution.

### 3.    The Settlement Affords Adequate Relief For the Class In Light Of The Facts, Risks, and Costs Of Litigation.

The Settlement Agreement provides substantial benefits to the Settlement Class while avoiding the significant expenses and delays attendant to discovery, motion practice related to summary judgment and class certification, trial, and appeals.  Resolution of this action affords the Class and Collective concrete relief now, rather than the potential for relief in the future.  While Plaintiffs' Counsel are confident that they would be successful, further litigation entails risks and delays in relief to Plaintiffs and the Settlement Class.  The Settlement Agreement provides an effective and efficient method to provide notice to and distribute relief to the Settlement Class.

Furthermore, the terms of an award of attorney's fees is fair and reasonable when compared to the relief for the class and is consistent with similar awards in wage-and-hour litigation.

Litigation of Plaintiffs' claims under the FLSA and the MWA will require substantial cost, time, and risk. As Your Honor previously stated in a similar matter:

> [A]lthough the FLSA and state law misclassification cases are not necessarily legally complex, they are heavily fact and time-intensive. Additionally, if this action were to proceed, the parties would need to propound and respond to discovery requests, take time-consuming depositions, and engage in motion practice related to class certification and summary judgment, all before preparing for what would likely be a lengthy trial. The parties' proposed Settlement avoids the significant time and expense that they would incur preparing this case for trial on the merits.

*Roberts v. TJX Cos.*, No. 13-13142, 2016 U.S. Dist. LEXIS 136987, at *21-22 (D. Mass. Sept. 30, 2016) (Burroughs, J.). Here, absent an approved settlement, the Parties in the Actions will be forced to continue litigation. The fact-intensive trials will result in significant expense to all parties. Any judgments will likely be appealed, extending the costs and duration of the litigations. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class.

In addition, while Plaintiffs are confident in their likelihood of success, Defendants maintain several defenses that could reduce the potential recovery for Plaintiffs and the Settlement Class. Defendants argue that Plaintiffs' MWA claim is unlikely to succeed because the MWA does not apply to employees of hospitals that receive contributions from local or state government or offer treatment to patients free of charge. Furthermore, Defendants argue that the damages for Plaintiffs' FLSA claim is smaller than Plaintiffs demand because Defendants made a good faith attempt to remedy the situation. While Plaintiffs disagree, the risk of no recovery for the Class and Collective remains. *See also Roberts*, 2016 U.S. Dist. LEXIS 136987, at *22-23 ("The Plaintiffs, regardless of the merits of their claims, face a real risk in establishing liability at trial.

Here, the questions of liability and damages are heavily fact-intensive. Determining liability in this case requires a jury to weigh numerous, interdependent factors. Furthermore, for the FLSA claims, the amount of damages would depend on the Plaintiffs' ability to prove the employer's willfulness and, for liquidated damages, lack of good faith."). Each of these defenses could impact Plaintiffs' request for damages and reduce Plaintiffs' and the Settlement Class' relief.

In reaching their agreement, the Parties took into account the uncertainty and risks in litigation, and the costs that each party will incur if litigation continues. Similarly, the UMass Defendants support this resolution, since it eliminates the risks, uncertainties, and costs of further litigation. The parties have concluded that it is in their mutual interest to resolve the litigation of the claims in the manner set forth in the Settlement Agreement.

Furthermore, the Settlement Fund will be distributed on a pro-rata basis based on the Collective Members and Class Members actual damages. In order to participate in the settlement, the Collective Members and Class Members simply have to return a FLSA Consent Form. This form does not request any personal information, aside from the contact information for each Collective Member and Class Member who wish to participate. In a similar class action settling claims under the FLSA and MWA, Judge Wolf stated:

> Under the proposed agreement, each class member will receive a minimum payment of $50.00 and will receive a *pro rata* portion of the settlement based on the weeks they worked for defendant and the value of their claims under the applicable state laws. Considering the risk that the class might have received no recovery if this case proceeded to trial, the proposed settlement is likely to be found to be a fair, adequate, and reasonable resolution of this case.

*Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (granting preliminary approval of the class and collective settlement). A similar conclusion is warranted here where the Settlement Class will receive a minimum payment of $50.00 and receive a *pro rata* share of the settlement based on the time worked.

Finally, the Notice Packet informs all of the Collective Members and Class Members about all of the expenses involved with the settlement, including an award of attorney's fees. As set forth above, the proposed distribution of the settlement fund provides for a payment of $400,000 for attorney's fees, or one-third of the settlement fund. This amount is consistent with both the percentage of common fund method permitted for determining attorneys' fees in class action settlements[6] and with Plaintiffs' Counsel's agreement for a one-third contingency with Plaintiffs. Furthermore, an award of reasonable attorneys' fees under the FLSA and the Massachusetts Wage Act would be mandatory if Plaintiffs and the Collective Members and Class Members prevailed on their claims.

As such, the proposed Settlement Agreement is fair, reasonable, and adequate.

### D.    The Proposed Notice Is Adequate And Appropriate.

Rule 23(e)(1)(B) provides that notice must be sent to class members prior to final approval of a settlement by the Court. The Notice provides the Collective Members and the Class members with all of the relevant information, including: the terms of the Settlement; who is a member of the Class; the date, time and place of the hearing for Final Approval; the proposed allocation of the Settlement Fund; the procedures and deadlines for objecting to the Settlement; the terms relating to attorneys' fees and costs; the terms relating to fees and expenses of the settlement administrator; the proposed service awards and how the Class Members can obtain additional information about the Settlement. *See* Exhibit 3 to the Frei-Pearson Decl.

---

[6] *See, e.g., Jean-Pierre v. J&L Calbe TV Servs.*, 538 F. Supp. 3d at 213 (granting preliminary approval of a wage and hour class settlement where the plaintiffs' counsel intended to seek up to one-third of the gross settlement fund); *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987, at *44 (granting final approval of a wage and hour class settlement and plaintiffs' counsel's requested fee award of one-third of the gross settlement fund).

As such, the Notice provides all required information and, therefore, gives adequate notice to the Class.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement, conditionally certify the FLSA Collective, conditionally certify the Massachusetts Wage Act Class, appoint Plaintiffs and Plaintiffs' Counsel as Class Representatives and Class Counsel, respectively, approve the proposed notices of settlement, confirm the appointment of CAC Services as the Settlement Administrator, and enter the contemporaneously filed Proposed Order.

Dated: May 12, 2023

Respectfully submitted,

/s/ Jeremiah Frei-Pearson
Jeremiah Frei-Pearson (*Pro Hac Vice*)
D. Greg Blankinship (BBO# 655430)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY 10601
jfrei-pearson@fbfglaw.com
gblankinship@fbfglaw.com

Kathy Jo Cook (BBO # 631389)
**SHEFF & COOK, LLC**
10 Tremont Street
7th Floor
Boston, MA 02108
kjcook@kjclawfirm.com

Philip J. Gordon (BBO# 630989)
Kristen M. Hurley (BBO# 658237)
**GORDON LAW GROUP, LLP**
585 Boylston Street

20

Boston, MA 02116
pgordon@gordonllp.com
khurley@gordonllp.com

*Attorneys for Plaintiffs*

**<u>Certificate of Service</u>**

I hereby certify that on May 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson