**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DANIELLE PALLOTTA and CHERYL LAFLAMME, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CENTER, KRONOS INCORPORATED, and UKG INC.,<br><br>        Defendants. | Civil Action No. 4:22-cv-10361-ADB<br><br>**DECLARATION OF JEREMIAH FREI-PEARSON IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Jeremiah Frei-Pearson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am an attorney duly admitted to practice law in the State of New York and am admitted to practice *pro hac vice* before this Court in connection with the above-caption action (the "Action").

2.    I am a partner in the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), and counsel for Plaintiffs Danielle Pallotta, Cheryl LaFlamme, Sandra Bravo, Melissa Lavin, Michelle Lemieux, Catherine Mysliewic, and Tania Ward ("Plaintiffs"), and the putative class in this case.

3.    I am the attorney principally responsible for the handling of this matter for my firm. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently thereto.

4.    I make this declaration in support of Plaintiffs' Motion for Preliminary Approval

1

of the Class Action Settlement filed herewith.

**I.     FBFG's Experience**

5.     My FBFG colleagues and I regularly engage in major complex litigation and have extensive experience in consumer privacy class action lawsuits, including cases of first impression to data breaches and consumer privacy throughout the country, and have been appointed class counsel numerous times.

6.     FBFG has a proven track record of zealous and successful advocacy on behalf of its plaintiffs and the interests of class members.  FBFG attorneys have successfully litigated complex class actions in federal and state courts all across the country and obtained successful results for clients against some of the world's largest corporations.  A sampling of FBFG's more significant past and present cases can be found in the Firm's Resume, attached as Exhibit 2.

**II.    Background Of This Litigation And Settlement Negotiations**

7.     This action arises out of the alleged failure of UMass Memorial Medical Center, Inc. ("UMMMC") and UMass Memorial Health Care, Inc. ("UMMHC") (collectively the "UMass Defendants") to accurately pay employees due to a data breach experienced by the Ultimate Kronos Group ("UKG"), a timekeeping and payroll provider, beginning on or about December 11, 2021.

8.     On March 9, 2022, Plaintiffs Danielle Pallotta and Cheryl LaFlamme commenced litigation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ *et seq.* and the Massachusetts Wage Act in the above captioned matter (the "Lawsuit"), on behalf of themselves, and on behalf of all current or former non-exempt employees of UMass Defendants.  The remainder of the Plaintiffs brought or intended to bring separate litigation alleging substantially similar allegations.

9.     Before filing Plaintiffs' original action, FBFG exhaustively investigated their

claims, including researching all applicable laws and determining relevant facts, researching publicly available materials and actions relating to similar data breaches, and interviewing numerous current and former UMMMC and UMMHC employees. FBFG also conducted extensive research into the dangers of identity theft and available credit monitoring and identity theft protection plans.

10. Plaintiffs' Counsel also diligently pursued discovery, propounding comprehensive written discovery on UMass Defendants and UKG. The Parties agreed to mediate the matter and engaged in informal discovery.

11. Plaintiffs and UKG, and other parties engaged in mediation and settlement talks but were ultimately unable to reach an agreement. Plaintiffs' counsel have stated openly that they could not agree to a nationwide settlement that provides all victims of UKG's data breach with an average of less than $1.00 per person (or with a payment close to those to those figures). Thus, Plaintiffs and their counsel did not participate in the settlement with UKG. Plaintiffs and their counsel took the position that they would object if UKG agreed to a settlement with other plaintiffs that resolved the monetary harms suffered by the victims of UKG's data breach for the trivial amounts reflected in UKG's global data breach settlement. *See In Re UKG Inc. Cybersecurity Litigation*. *In Re UKG Inc. Cybersecurity Litigation*, Case No. 22-00346, Dkt. No. 68 (N.D. Cal. Jan. 18, 2022). Notably, after extensive communication between Plaintiffs' counsel and counsel for UKG, UKG's settlement does not release Class Members' monetary claims against UKG.

12. On January 30, 3023, Plaintiffs and the UMass Defendants participated in a full-day, arms-length mediation session before an independent mediator, the Honorable Diane Welsh (retired) of JAMS. Both Parties provided Judge Welsh with mediation statements in advance of the session. Following the full day of mediation, the Parties continued to work with Judge Welsh

towards settlement, engaging in numerous teleconferences and other communications as they negotiated the terms of the settlement.

13. The negotiations leading to the Settlement were hard-fought. The Parties were able to articulate the strengths and weaknesses of each other's position, ultimately reaching a settlement after weighing the facts and applicable law, the risks of continued litigation, and Judge Welsh's guidance. Negotiating the settlement terms was a long and sometimes highly contentious process and ultimately required several months to reach a final agreement. The Parties executed the Settlement Agreement on May 12, 2023.

14. Plaintiffs have participated actively in the case on behalf of themselves and the Settlement Class, taking time to repeatedly speak with Class Counsel, search for and provide relevant evidence, review and approve the complaints for filing, keep abreast of the litigation for and remain actively involved in the settlement process. They have also indicated their willingness to sit for depositions in this litigation and indicated their desire to continue protecting the interests of the class through settlement or continued litigation. Moreover, Plaintiffs intend to work with Class Counsel and with their union and colleagues in efforts to maximize the number of Settlement Class members who participate in the settlement.

15. The Plaintiffs' interests are identical to those of the Class, and Plaintiffs have no conflicts of interest with the Class.

### III. The Settlement

16. The proposed Class Definition consists of the following Classes:

**FLSA Collective:** All hourly employees of UMass Memorial Medical Center, Inc. and/or UMass Memorial Health Care, Inc. who, according to Defendants' records, did not receive timely payment of wages as a result of the Data Breach and who consent to join this settlement by completing and returning a valid and timely FLSA Consent Form.

**Massachusetts Wage Act Class:** All hourly employees of UMass Memorial Medical Center, Inc. and/or UMass Memorial Health Care, Inc. who, according to Defendants' records, did not receive timely payment of wages as a result of the Data Breach

17. Based on documents and data produced during informal mediations and conferrals with the UMass Defendants' counsel, Plaintiffs estimate that the FLSA Collective and Massachusetts Wage Act Class contain approximately 3,178 members who would be entitled to receive payment under the Settlement.

18. There are three other cases known by the Parties that will be affected by this Settlement:

> (1) *Lavin v. University of Massachusetts Memorial Medical Center*, No. 2285CV00056C (Mass. Sup. Ct.);
> (2) *Ward v. UKG, Inc., UMass Memorial Health Care, Inc., and UMass Memorial Medical Center, Inc*., No. 22-40084 (D. Mass.);
> (3) *Mysliewic v. UKG, Inc., and UMass Memorial Medical Center, Inc*., No. 22-40083 (D. Mass.).

19. Those related cases will be dismissed in the event that this Court finally approves the Settlement.

20. The Parties have selected CAC Services Group, LLC ("CAC" to act as Settlement Administrator. The Parties selected CAC after Plaintiffs and the UMass Defendants solicited bids from several settlement administrators. CAC provided the most reasonable bid.

21. CAC is an experienced, qualified administrator in the business of efficiently processing class action settlements.

22. Pursuant to the standards and procedures set forth in the Settlement Agreement, CAC shall receive, review, and approve or reject Claim Forms.

**IV.  Exhibits**

23. Attached as Exhibit 1 is a true and correct copy of the Settlement and Release Agreement and its attendant exhibits.

5

24. Attached as Exhibit 2 is a true and correct copy of FBFG's Firm Resume.

25. Attached as Exhibit 3 is a true and correct copy of the Parties' agreed proposed Class Action Long Form Notice.

26. Attached as Exhibit 4 is a true and correct copy of the Parties' General Releases.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2023, at White Plains, New York.

*s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson