**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DANIELLE PALLOTTA and CHERYL LAFLAMME, on behalf themselves and all others similarly situated,

Plaintiffs,

v.

UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CENTER, KRONOS INCORPORATED, and UKG INC.,

Defendant.

Civil Action No. 4:22-cv-10361-ADB

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNCONTESTED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD PAYMENTS

---

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND AND SUMMARY OF THE SETTLEMENT TERMS ..... 3

A. Background Of Litigation. ..... 3

B. Summary Of The Settlement. ..... 6

C. The Class Has Reacted Well To The Settlement. ..... 6

III. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS ..... 7

IV. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES. ..... 8

A. Class Counsel Are Entitled to Compensation. ..... 8

B. The Requested Fee Is Justified Under the Lodestar Method. ..... 10

C. The Requested Fee Is Justified Under the Percentage Method. ..... 13

1. The Size Of The Fund Created Supports Awarding The Requested Fees ..... 13

2. The Class Has Reacted Positively To The Settlement. ..... 14

3. Class Counsel Litigated With Skill, Experience, And Efficiency. ..... 15

4. The Litigation Was Complex. ..... 16

5. The Litigation Was Risky. ..... 16

6. Class Counsel Devoted Significant Time To The Litigation. ..... 18

7. The Awards In Similar Cases Favor Awarding The Requested Fees. ..... 18

8. Public Policy Considerations Support Awarding The Requested Fees. ..... 19

V. THE EXPENSES PLAINTIFFS INCURRED WERE B REASONABLE AND NECESSARY TO ACHIEVE THE SETTLEMENT ..... 20

VI. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Andrade v. Jamestown Housing Authority*,
82 F.3d 1179 (1st Cir. 1996) ........................................ 11, 12

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ........................................ 17

*Arthur v. SLM Corp.*,
No. 10-198 (W.D. Wash. Aug. 8, 2012) ........................................ 15

*Barr v. Drizly, LLC*,
No. 20-11492, 2021 U.S. Dist. LEXIS 217158 (D. Mass. Nov. 4, 2021) ........................................ 20

*Bettencourt v. Jeanne D'Arc Credit Union*,
No. 17-12548, 2020 U.S. Dist. LEXIS 106469 (D. Mass. June 17, 2020) ........................................ 7

*Bellaspica v. PJPA*,
No. 13-3014 (E.D. Pa. June 22, 2016) ........................................ 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................ 8

*Bozak v. FedEx Ground Package Sys.*,
No. 11-00738, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014) ........................................ 8

*Brent S. v. Blue Cross & Blue Shield of Mass.*
(D. Mass. No. 17-11569, April 11, 2023) ........................................ 7

*Carlson v. Target Enter.*,
447 F. Supp. 3d 1 (D. Mass. 2020) ........................................ 7

*Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co.*,
745 F.3d 1 (1st Cir. 2014) ........................................ 13

*Citigroup Inc. v. Seade*,
No. 21-10413, 2023 U.S. Dist. LEXIS 2758 (S.D.N.Y. Jan. 6, 2023) ........................................ 12

*Clay v. Secretary of Health & Human Services*,
823 F.2d 679 (1st Cir. 1987) ........................................ 19

*Conley v. Sears Roebuck and Co.*,
222 B.R. 181 (D. Mass. 1998) ........................................ 13

*Ford v. Takeda Pharms. U.S.A., Inc.*,
2023 U.S. Dist. LEXIS 93286 (D. Mass. Mar. 31, 2023) ........................................ 18

*Gonpo v. Sonam's Stonewalls & Art, LLC*,
No. 16-40138, 2021 U.S. Dist. LEXIS 88853 (D. Mass. April 1, 2021) ........................................ 20

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir. 1974) ........................................................................................................ 14

*Hamilton v. SunTrust Mortg. Inc.*,
No. 13-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ........................................................ 15

*Hill v. State St. Corp.*,
No. 09-12146, 2014 U.S. Dist. LEXIS 179702 (D. Mass. Nov. 26, 2014) ..................................... 13

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
No. 09-20674, 2014 U.S. Dist. LEXIS 125041 (D. Mass. September 8, 2014) ............................. 20

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) ............................................................................................... 8, 9, 20

*In re Flag Telecom Holdings*, Ltd. Sec. Litig.,
No. 02-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) .................................. 10, 14

*In re Lupron Mktg. & Sales Practices Litig.*,
No. 01-10861, 2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) .................................. 9, 16

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
630 F. Supp. 3d 241 (D. Mass. September 19, 2022) ................................................................ 7, 10

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .............................................................................. 7, 10, 13, 18

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3rd Cir. 2005) ........................................................................................................ 12

*In re Stocker Yale, Inc. Sec. Litig.*,
No. 05-00177, 2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007) ......................................... 18

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05-01695, 2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. November 7, 2007) .............................. 17

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) ..................................................................................................................... 20

*Kondash v. Citizens Bank*,
No. 18-00288, 2020 U.S. Dist. LEXIS 241588 (D.R.I. Dec. 23, 2020) ......................................... 14

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
No. 17-10219, 2017 U.S. Dist. LEXIS 87928 (D. Mass. June 8, 2017) ...................................... 7, 8

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d (S.D.N.Y. 2002) .............................................................................. 10, 14, 17

*Noll v. Flowers Foods Inc.*,
No. 15-00493, 2022 U.S. Dist. LEXIS 75349 (D. Me. Apr. 26, 2022) .......... 9

*Norkunas v. Brossi Bros. Ltd. P'ship*,
No. 10-11949, 2012 U.S. Dist. LEXIS 30474 (D. Mass. Mar. 7, 2012) .......... 11

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......... 14

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... 20

*Poertner v. Gillette Co.*,
618 Fed. Appx. 624 (11th Cir. 2015) .......... 14

*Pollard v. Remington Arms Co., LLC*,
320 FRD 198 (W.D. Mo. 2017) .......... 14

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) .......... 17

*Roberts v. TJX Cos.*,
No. 13-13142, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sep. 30, 2016) .......... 9, 13, 14, 18

*Rolland v. Spark Energy, LLC*,
No. 17-02680 (D.N.J. Dec. 6, 2022) .......... 15

*Sabol v. Hydroxatone LLC*,
No. 11-04586, 2013 U.S. Dist. LEXIS 166520 (D.N.J. Nov. 22, 2013) .......... 14

*San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) .......... 9

*Scovil v. FedEx Ground Package Sys.*,
No. 10-515, 2014 U.S. Dist. LEXIS 33361 (D. Me. March 14, 2014) .......... 7, 8

*Touhey v. United States*,
No. 08–1418, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. July 25, 2011) .......... 14

*Velez v. Majik Cleaning Serv.*,
No. 03-8698, 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783 .......... 8

*Machado v. System LLC*,
465 Mass. 508 (2013) .......... 20

**Statutes**

Fed. R. Civ. P. 23 .......... 5, 9, 20

29 U.S.C. § 216 .......... 5, 20

29 U.S.C. § 201 .......... 4, 5

Mass. Gen. Laws Ch. 149, § 150 ........................................................................................................ 20

Danielle Pallotta, Cheryl LaFlamme, Sandra Bravo, Melissa Lavin, Michelle Lemieux, Catherine Mysliewic and Tania Ward (collectively, "Plaintiffs") submit this Memorandum of Law in support of their uncontested motion for attorneys' fees, expenses, and service award payments.

## I. INTRODUCTION

Plaintiffs and their counsel, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Sheff & Cook, LLC, Gordon Law Group, LLP (collectively, "Class Counsel"), and McDonald Lamond Canzoneri LLC[1] have achieved an excellent result for the Class. They succeeded in securing a settlement ("Settlement") with Defendants UMass Memorial Medical Center, Inc. and UMass Memorial Health Care, Inc. (collectively the "UMass Defendants", collectively with Plaintiffs, the "Settling Parties") that provides a settlement fund in the value of $1,200,000, which shall be distributed pursuant to the settlement and release agreement (the "Settlement Agreement").

Under the Settlement, Class members are entitled to an average of $374.77, with all Class members entitled to a minimum of $50. Settlement Agreement ¶ V.c.(5). Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.)" ¶ 17. Participating Class members in this settlement will, ultimately, receive more money as liquidated damages than they would have received if there had been no wage and hour violations. Settlement Agreement ¶ V.e.

This Court preliminarily approved the Settlement and ordered CAC Service Group, LLC (the "Administrator") to disseminate a notice by first class mail and by email to known Class members, and a reminder notice via postcard. ECF No. 83. Although the time to object and opt out has not yet passed, in order to provide all information to any possible objector, Plaintiffs respectfully request that the Court approve their request for service awards of $8,500.00 for each of the Plaintiffs, for attorneys' fees of $400,000.00, and for reimbursement of expenses and costs of $18,688.42.

---

[1] Class Counsel have been assisted by McDonald Lamond Canzoneri LLC, which represents the Massachusetts Nurse's Association ("MNA"). Declaration of Jack Canzoneri (Canzoneri Decl.) ¶ 6.

The requested service awards and fee awards are separate and apart from the benefit received by Class members and in no way diminish class members' recovery. Indeed, if the Court were to deny the requested fee award, in whole or in part, none of the fees that Class Counsel are requesting would be paid to the Class. That money would just remain with the UMass Defendants. Thus, rejecting or reducing the service award or attorneys' fee request would simply benefit Defendants, without any offsetting gain to the Class. Reducing the requested service awards or fees could have a chilling effect on class action litigation in Massachusetts.

Plaintiffs were willing to put their names on this lawsuit against their employer; they were heavily involved in this litigation and they repeatedly demonstrated that their priority was achieving the best possible result of the Class. Indeed, Plaintiffs dismissed the possibility of individual resolution, participated in the litigation and settlement process, and worked diligently with their union and with Class Counsel to ensure that Class members participated in the Settlement. Plaintiffs respectfully submit that they should each be awarded $8,500 as a service award.

Significantly, this Settlement is substantially stronger than similar settlements stemming from many employers' failure to pay proper wages as a result of payroll issues ("Kronos Outage") caused by Defendants Kronos Incorporated and UKG, Inc. (collectively, the "UKG Defendants"), a payroll provider. For example, in recently approved settlements of *Estevez v. Change Healthcare Inc.*, Case No 3:22-cv-327 (M.D.Tenn.) and *Woodruff v. Kaiser Aluminum Corp.*, No. 22-00333, ECF No. 31 (M.D. Tenn.), counsel recovered significantly less money per class member than did Class Counsel. *Compare,*, *Estevez.*, No 3:22-cv-327, ECF No. 34 (June 13, 2023) (awarding $674,500 in attorneys' fees, which equal 35.5% of the gross settlement amount, and awarding $5,252.70 in costs in a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $343.70 and a minimum recovery of $50); *Woodruff*, No. 22-00333, ECF No. 31 (May 4, 2023) (awarding $200,000 in attorneys' fees, or 40% of the gross settlement amount, and

$5,252.70, in costs in a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $205 and a minimum recovery of $40); *see also Marshall v. Coca-Cola Consolidated Inc.*, Case No. 22-00214, ECF. No. 22 (W.D.N.C. June 27, 2023) (preliminarily approving a settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $244 and a minimum recovery of $40, and where class counsel requested fees of $1,220,000, which equaled 40% of the gross settlement amount, plus out-of-pocket expenses). Significantly, Class Counsel obtained a better result than in those cases, and the fee request here is in line with the requests that courts deemed reasonable in those cases.

Plaintiffs' counsel incurred a lodestar of $567,833.85, and are seeking a negative multiplier of .7. The amount requested falls well within the range of attorneys' fees awarded by courts within this Circuit using either the lodestar or percentage of the fund methodology, and as many courts have approved similar fee requests in related cases, Plaintiffs respectfully submit that this Court should approve the requested attorneys' fees.

## II. BACKGROUND AND SUMMARY OF THE SETTLEMENT TERMS

### A. Background Of Litigation.

UMass Defendants employed hourly employees to work in numerous sectors of the health care industry. Amended Collective and Class Action Complaint, ECF No. 8 ("Amended Complaint" or "Am. Compl.") ¶19. Plaintiffs and Class members' principal job duties included, but were not limited to, providing care for UMass Memorial's patients as registered nurses. *Id.* ¶ 20. On or about December of 2021, the UKG Defendants,[2] the timekeeping provider for the UMass Defendants, negligently allowed the Kronos Outage to happen, and, as a result, the UMass Defendants were unable to accurately pay the Collective members and the Class members. *Id.* ¶¶ 34-35.

[2] Plaintiffs have not settled their claims against the UKG Defendants, and Plaintiffs intend to pursue those claims separately. Frei-Pearson Decl. ¶35.

As a result of the Kronos Outage, UMass Defendants instituted a "payment freeze" for all hourly employees, such that the pay for each pay period following that date was set arbitrarily to the period prior to the freeze, with limited exception. *Id.* ¶ 25. For example, an employee who worked 10 hours in the pay period prior to the Kronos Outage, but worked 40 hours in each successive pay period in December 2021 and January 2022, was paid for 10 hours worked in each pay period during the payment freeze. As a result, Plaintiffs and Class members received payment for fewer hours than they worked. *Id.* ¶ 45. In the months after the pay freeze, UMass Defendants repaid employees for all of the improper payments following the Kronos Outage. Frei-Pearson Decl. ¶ 19.

On or about January 19, 2022, Melissa Lavin and Michelle Lemieux, represented by the Gordon Law Group, filed a lawsuit in state court against UMass for underpayments resulting from the Kronos Outage. Frei-Pearson Decl. ¶ 9. Upon further investigation, Mr. Gordon realized that the underpayments were likely due to the Kronos Outage, at which point his office reached out to Jeremiah Frei-Pearson of Finkelstein, Blankinship, Frei-Pearson & Garber ("FBFG") to lead a larger class action. On or about March 9, 2022, Plaintiffs Danielle Pallotta and Cheryl LaFlamme filed a putative class and collective action in this Court under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the Massachusetts Wage Act seeking redress for the damages they and their colleagues suffered due to the Kronos Outage. Complaint, ECF No. 1; see also Am. Compl. Plaintiffs Catharine Mysliewic and Tania Ward filed related cases in July of 2022. Frei-Pearson Decl. ¶ 11. Plaintiffs were formally represented by different counsel, but Plaintiffs' Counsel all communicated and worked effectively together across multiple venues to obtain the best possible result. Frei-Pearson Decl. ¶ 36.

Plaintiffs risked possible retaliation by putting their names on this litigation, and did so because they believed that any risk to them was outweighed by the importance of their colleagues receiving proper compensation. Declaration of Danielle Pallotta ("Pallotta Decl.") ¶ 6; Declaration of Cheryl

LaFlamme ("LaFlamme Decl.") ¶ 6; Declaration of Sandra Bravo ("Bravo Decl.") ¶ 6; Declaration of Melissa Lavin ("Lavin Decl.") ¶ 6; Declaration of Michelle Lemieux ("Lemieux Decl.") ¶ 6; Declaration of Catherine Mysliewic ("Mysliewic Decl.") ¶ 6; Declaration of Tania Ward ("Ward Decl.") ¶ 6. Plaintiffs regularly communicated with Class Counsel and were actively involved in settlement discussions. Pallotta Decl. ¶ 9; LaFlamme Decl. ¶ 9; Bravo Decl. ¶ 9; Lavin Decl. ¶ 9; Lemieux Decl. ¶ 9; Mysliewic Decl. ¶ 9; Ward Decl. ¶ 9. Plaintiffs are all active members of the Massachusetts Nurse's Association ("MNA"). Pallotta Decl. ¶ 10; LaFlamme Decl. ¶ 10; Bravo Decl. ¶ 10; Lavin Decl. ¶ 10; Lemieux Decl. ¶ 10; Mysliewic Decl. ¶ 10; Ward Decl. ¶ 10. As active members of MNA, Plaintiffs assisted Class Counsel with providing information about the settlement to union representatives and to Class members, and Plaintiffs themselves answered Class members' questions. *Id.* Throughout the duration of the litigation, Plaintiffs have done everything asked of them to assist the class. Pallotta Decl. ¶ 11; LaFlamme Decl. ¶ 11; Bravo Decl. ¶ 11; Lavin Decl. ¶ 11; Lemieux Decl. ¶ 11; Mysliewic Decl. ¶ 11; Ward Decl. ¶ 11; Frei-Pearson Decl. ¶ 7.

The Parties engaged in preliminary discovery and fully briefed a motion to dismiss. Frei-Pearson Decl. ¶ 13. After each side was in a position to evaluate the merits, strengths and weaknesses of the claims or defenses, the Parties agreed to engage in arms- length negotiations, concluding in a mediation with an experienced mediator, Ret. Judge Diane Welsh, of JAMS. *Id* ¶ 14. The Parties reached an agreement in principle with Judge Welsh's assistance. *Id.* ¶ 15.

Following continued negotiations over settlement details, Plaintiffs and the UMass Defendants entered into a class settlement agreement (the "Settlement Agreement"), to resolve the claims of Plaintiffs, employees who opt-in to a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), (the "Collective"), and a class of employees under Rule 23 (the "Class") against the UMass Defendants for issues relating to the Kronos Outage. On May 25, 2023, the Court preliminarily approved the Settlement and approved the form and distribution of notice.

**B. Summary Of The Settlement.**

The Settlement requires the UMass Defendants to fund an all-in payment of $1.2 Million, that will fund direct payments to Class and Collective members who opt-in (collectively, the "Claimants"), attorneys' fees and litigation costs, settlement administration costs, and service award payments. Settlement Agreement, ¶ V.a. The Claims Administrator shall allocate the payments to Class members in proportion to each member's approximate potential damages. *Id.*, ¶ V.c.(5). Unclaimed funds revert to the UMass Defendants. *Id.*, ¶ V.c.(6). The average payment to Claimants is $374.77. Frei-Pearson Decl. ¶ 17. All Claimants shall receive a minimum payment of $50.00. ¶ V.c.5. Class members participating in this settlement will, ultimately, receive more money as liquidated damages than they would have received if there had been no wage and hour violations. Frei-Pearson Decl. ¶ 20. The FLSA Collective and the Massachusetts Wage Act Class contain approximately 3,202 members who are entitled to receive payment under the Settlement. Frei-Pearson Decl. ¶ 18.

**C. The Class Has Reacted Well To The Settlement.**

CAC sent the notice packet to Class members by first class mail and mail on June 8, 2023, and a reminder notice via postcard to Class members who had not made a claim. Frei-Pearson Decl. ¶ 22. Plaintiffs and Class Counsel have worked diligently to inform Class members about the settlement. Frei-Pearson Decl. ¶ 23. Class Counsel fielded numerous questions from class members. *Id.* Class Counsel has also been in regular contact with the MNA, and has answered questions and provided information about the settlement to union representatives. *Id.* ¶ 24.

To date, the Class's reaction to the Settlement has been excellent. As of August 18, 29.23% of Class members have participated. *Id.* ¶ 27. As of the same date, no Class member has objected to the settlement and one Class member has opted out of the Settlement. *Id.* ¶ 28. Class members have 18 more days (until September 6, 2023) to participate in the Settlement or to opt out or object.

## III. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS

Plaintiffs in class and collective actions play a crucial role in bringing justice to those who may otherwise have no access to judicial enforcement of their rights. *Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 U.S. Dist. LEXIS 87928, at *5-6 (D. Mass. June 8, 2017). These awards recognize the burdens assumed by plaintiffs in instituting and prosecuting the actions, the time spent communicating with counsel and fulfilling litigation responsibilities, and the risks that plaintiffs bear in bringing the lawsuit. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). "Incentive awards are an appropriate means for encouraging individuals to undertake the responsibility of representative lawsuits." *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020).

"[I]n wage and hour cases, awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher." *Scovil v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 33361, at *6-7 (D. Me. March 14, 2014) (approving $15,000 incentive awards to plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts).[3] The requested service awards of $8,500 for each of the Plaintiffs fall well within the range of service awards approved in prior cases.

Courts assess service awards by considering "(1) the steps these individuals have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, (3) the amount of time and effort they have expended in pursuing the litigation, and (4) any negative

[3] *See, e.g.*, *Lauture* 2017 U.S. Dist. LEXIS 87928, at *9 (D. Mass. June 8, 2017) (awarding service awards of $15,000 each to the two named plaintiffs); *Brent S. v. Blue Cross & Blue Shield of Mass.* (D. Mass. No. 17-11569, April 11, 2023) (awarding service awards of $20,000 to each of the five plaintiffs); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 248 (D. Mass. September 19, 2022) (awarding $50,000 service awards for each of the two class representatives); *Bettencourt v. Jeanne D'Arc Credit Union*, 2020 U.S. Dist. LEXIS 106469 (D. Mass. June 17, 2020) (awarding a service award of $10,000).

effects that they have risked." *Lauture* 2017 U.S. Dist. LEXIS 87928, at *7 (D. Mass. June 8, 2017) (citing *Scovil*, 2014 U.S. Dist. LEXIS 33361, 2014 WL 1057079 at *6).

Plaintiffs put considerable time and effort into protecting the Class's interests. Plaintiffs conferred with Class Counsel regarding their claims, assisted in the preparation of the Complaint, assisted Class Counsel in analyzing documents and preparing for mediation, conferred with Class Counsel regarding the propriety of the settlement, and worked diligently to inform Class members about the settlement. Pallota Decl. ¶¶ 7-10; LaFlamme Decl. ¶¶ 7-10; Bravo Decl. ¶¶ 7-10; Lavin Decl. ¶¶ 7-10; Lemieux Decl. ¶¶ 7-10; Mysliewic Decl. ¶¶ 7-10; Ward Decl. ¶¶ 7-10; Frei-Pearson Decl. ¶ 5. Without Plaintiffs' efforts, there would be no settlement and the eligible Class members would not be entitled to any relief. Furthermore, Plaintiffs undertook substantial risk by bringing this public action. *See Bozak v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 106042, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Velez v. Majik Cleaning Serv.*, No. 03-8698, 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007)). For these reasons the Court should approve the requested Service Awards.

## IV. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES.

### A. Class Counsel Are Entitled to Compensation.

The Supreme Court has long held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *see also In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the

benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax").

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and promote private enforcement of, and compliance with, employment laws. Rule 23 authorizes the court, when approving a class action settlement, to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In *Roberts v. TJX Cos.*, this Court recognized that "the FLSA provides for the award of a 'reasonable attorney's fee' and costs to a prevailing plaintiff". *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987, *29-30 (D. Mass. September 30, 2016) (Burroughs, J.).

Judge Stearns observed that:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005).

The First Circuit recognizes two general methods for awarding attorneys' fees in class actions: "the 'percentage of fund' method, under which class counsel is awarded a fee equal to a 'reasonable percentage of the fund recovered for those benefitted by the litigation,' and the 'lodestar' method, under which the fee awarded to class counsel is calculated based on the amount that the attorneys could have billed the class for their time." *Noll v. Flowers Foods Inc.*, 2022 U.S. Dist. LEXIS 75349, *24-25 (D. Me, April 26, 2022) (citing *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 305 (1st Cir. 1995).

Here, Class Counsel's request for $400,000.00 is reasonable under both the lodestar method, as it reflects a negative multiplier of .7 on Class Counsel's lodestar, and the percentage method, as it reflects a third of the total settlement value.

**B. The Requested Fee Is Justified Under the Lodestar Method.**

Under the lodestar method, a court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect factors such as the quality of counsel's work. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *66-67, at *23; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d at 370 ((S.D.N.Y.2002) (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted). "The typical range of the lodestar multiplier allowed by this Court is between one and 2.7. Most multipliers fall between one and four, although there is significant variation." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 246 (D. Mass. September 19, 2022) (citing *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 82 (D. Mass 2005)).

The fee requested in this case is more than justified under the lodestar method. Class Counsel devoted in excess of 933.61 hours to this action, including time spent on conducting a thorough investigation, researching the facts and the law, drafting the complaint and amended complaint, opposing a motion to dismiss, reviewing documents and information produced by Defendants, preparing for and attending mediation before Honorable Diane M. Welsh (ret.), negotiating the settlement, preparing and editing the settlement papers, preparing the papers for settlement approval, and responding to Class members' inquiries. Frei-Pearson Decl., ¶¶ 40-41; Cook Aff. ¶ 22 and Exhibit 1; Canzoneri Decl. ¶ 7 and Exhibit 1; Gordon Decl. ¶ 19 and Exhibit 1. After multiplying the time spent with the reasonable hourly rate for each attorney, the total amount of attorneys' fees sum up to

$567,833.85.[4] Class Counsel's requested amount of $400,000 is substantially lower than Class Counsel's lodestar, reflecting a negative multiplier of .7. Frei-Pearson Decl., ¶ 39.

Plaintiffs' Counsel include highly skilled advocates who are experienced in complex class action litigation. *See* Frei-Pearson Decl. ¶ 29; FBFG Firm Resume (Ex. 1 to Frei-Pearson Decl.). "To determine a reasonable hourly rate, the court applies the prevailing rates in the 'relevant community' (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Norkunas v. Brossi Bros. Ltd. P'ship*, 2012 U.S. Dist. LEXIS 30474, *24 (D. Mass. March 7, 2012) (citing *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190 (1st Cir. 1996)).

Here, the hourly rates charged by Plaintiffs' attorneys ranged from $185.00 - $985.00.[5] Frei-Pearson Decl., ¶ 41; Cook Aff. ¶ 22 and Exhibit 1; Canzoneri Decl. ¶ 12 and Exhibit 1; Gordon Decl. ¶ 28 and Exhibit 1. Courts routinely approve hourly rates in this range. *See, e.g., BioPoint, Inc. v. Dickhaut,* U.S. Dist. LEXIS 118565 (D.Mass. July 11, 2023) (awarding attorneys' fees at an average billing rate of $956); *Villanueva v. Wells Fargo Bank, N.A.*, No. 13-5429 (S.D.N.Y. Feb. 13, 2017), ECF No. 116 (approving FBFG's hourly rates); *Hamlen v. Gateway Energy Services Corp.,* ECF No. 16-03526 (S.D.N.Y. Sept. 13, 2019), ECF No. 141 (same); *Sackin v. TransPerfect Global, Inc.*, No. 17-01469 (S.D.N.Y. Dec. 14, 2018), ECF No. 74 (same); *Thomspon et al. v. Parts Authority, LLC et al.,* No. 500141/2022 (N.Y. Sup. Ct. Sep. 6, 2022), NYSCEF No. 38 (same); *Farruggio et al. v. 918 James Receiver, LLC et al.,* No. 003831/2017(N.Y. Sup. Ct. Apr. 23, 2021), NYSCEF No. 632 (same); *Claridge v. North American Power & Gas, LLC*, No. 15-1261 at 6 (S.D.N.Y. June 29, 2018), ECF No. 152 (same). The rates are the usual and customary rates that Plaintiffs' counsel charge to paying clients. Frei-Pearson Decl. ¶ 43.

---

[4] This number does not take into account additional time that will need to be spent by Class Counsel to take this case through the final settlement approval process, including drafting, preparation for, and participation in the final approval hearing, and responding to Class members' inquiries.

[5] Plaintiffs recognize that FBFG's regular hourly rates of $985 are higher than is typical in this District. However, even if the Court were to reduce FBFG's top hourly rate to $355, Class Counsel would still be seeking a negative multiplier.

These hourly rates are consistent with the "Laffey Matrix" used by courts to assess the reasonableness of attorney fees. *See* http://www.laffeymatrix.com/see.html (establishing a current rate of $997 per hour for attorneys with 20 years or more of experience, $829 per hour for attorneys with 11-19 years of experience, $733 for attorneys with 8-10 years of experience, and $508 for attorneys with 4-7 years of experience). The rates are also consistent with annual reviews of the competitive and relevant legal marketplace in Boston.[6]

The rates charged by non-attorney professionals ranged from $160-$175. Frei-Pearson Decl. ¶ 41. Courts typically approve hourly rates for non-attorney professionals like paralegals up to $200.00 per hour. *Citigroup Inc. v. Seade*, No. 21-10413, 2023 U.S. Dist. LEXIS 2758, at *5 (S.D.N.Y. Jan. 6, 2023) (noting that courts approve hourly rates between $150 and $200 for paralegals). Accordingly, the non-attorney professionals' hourly rates are also reasonable.

Comparing the lodestar with the requested fee of $400,000 yields a negative multiplier of .7. This multiplier is far below the commonly accepted range in this circuit. In *In re Relafen Antitrust Litig.*, Judge Young held that:

> A multiplier of 2.02 is appropriate. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-299, 303-04 (3rd Cir. 2005)(finding no abuse of discretion where district court approved attorneys fees with a "fairly common" lodestar multiplier of 4.07, despite objection that lodestar multiplier could not be above 3.); *Vizcaino*, 290 F.3d at 1051 n.6 (charting attorney's fees awards and multipliers in common fund cases of $ 50-$ 200 million from 1996-2001, and noting "a range of 0.6-19.6 with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13

[6] The market-rate survey for the year 2020, reflects that:

- The median rate in Boston in 2020 for partners with 26-30 years' experience at 1st Quartile firms was $1,116 per hour. The median rate was $946 per hour and the lowest rate was $788 per hour. Gordon Decl. Exhibit B.
- The median rate in Boston in 2020 for partners with 21-25 years' experience at 1st Quartile firms was $1096 per hour. The median rate was $872 per hour and the lowest rate was $727 per hour. *Id.*
- The median rate in Boston in 2020 for senior associates with 13+ years' experience was $722 per hour. *Id.*
- The median rate in Boston in 2020 for associates with 4 years' experience was $513 per hour. *Id.*

> of 24, or 54%) in the 1.5-3.0 range"); *Conley v. Sears Roebuck and Co.*, 222 B.R. 181 (awarding multiplier of 8.9 to arrive at a $ 7,500,000 fee).

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. September 28, 2005).[7]

The negative multiplier of .7 sought here is far lower than multipliers that are consistently found reasonable in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, and the efficiency with which this case was litigated. In sum, the fee sought here, which results in a negative multiplier of .7 is reasonable and within the range approved in past cases.

**C. The Requested Fee Is Justified Under the Percentage Method.**

When determining the reasonableness of a fee award under the percentage method, courts in the First Circuit have considered the following factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the financial risks to the attorneys; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; and (8) public policy considerations. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52.

**1. The Size Of The Fund Created Supports Awarding The Requested Fees**

Here, the total settlement is valued at $1.2 Million. Participating Class members who were underpaid will, ultimately, receive more money than they would have received if there had been no wage and hour violations. Frei-Pearson Decl. ¶ 20. "The size of the Settlement here supports the reasonableness of the requested fee. Moreover, the use of the percentage method directly incorporates the value of the recovery obtained into the calculation of the fee." *Hill v. State St. Corp.*, 2014 U.S. Dist. LEXIS 179702, *45 (D.Mass, November 26, 2014). "[O]ne-third of the Settlement Fund is fair, reasonable and appropriate compensation for the work done by Class Counsel to create

---

[7] Indeed, in *TJX*, this Court approved multiplier of 1.96. *TJX*, 2016 U.S. Dist. LEXIS 136987, *44 (citing *Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014).

the Settlement Fund". *Kondash v. Citizens Bank*, 2020 U.S. Dist. LEXIS 241588, *18 (D.R.I. Dec. 23, 2020).

**2. The Class Has Reacted Positively To The Settlement.**

Courts give "great weight" to Class members' reaction to a class action settlement. *Maley*, 186 F. Supp. 2d at 374; *see also In re Relafen Antitrust Litig.*, 231 F.R.D. at *80. Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee. *Id.* In determining the reasonableness of class counsel's requested fees, the Court in *TJX Cos.* considered that a lack of objection weighs in favor of the attorneys' fee award. *TJX Cos.,* 2016 U.S. Dist. LEXIS at *35 ("the Court has considered that no class members have objected to the Settlement generally, or to the attorneys' fee award in particular."); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 ("overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application."); *Greenspun v. Bogan*, 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a settlement].").

Moreover, approximately 29.23% of the Class submitted a claim to participate in the Settlement. Frei-Pearson Decl. ¶ 27. In *TJX,* this Court awarded the requested attorneys' fees where the claims rate was 39%. *TJX,* 2016 U.S. Dist. LEXIS 136987. Indeed, "[c]ourts around the country have approved settlements where the claims rate was less than one percent." *Pollard v. Remington Arms Co., LLC*, 320 FRD 198, 214-25 (W.D. Mo. 2017) (awarding the requested fees of $12.5 Million based on the total amount made available where the claims rate was 0.29%) (collecting cases).[8]

[8] *See, e.g.*, *Poertner v. Gillette Co.,* 618 Fed. Appx. 624, 625-26 (11th Cir. 2015) (approving 7.26 million-member settlement class when just 55,346 -- less than 1% -- filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 -- approximately 1.1% -- filed claims); *Sabol v. Hydroxatone LLC*, No. 11-04586, 2013

Although courts look to claims rate to gauge class reaction to a proposed settlement, "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *5 (S.D. Fla. Oct. 24, 2014). Here, the participating Class members will receive more money than they would have received if there had been no wage and hour violations.

Moreover, Class Counsel's team communicated about the Settlement with class members via text messages, emails, phone calls, and/or Zoom meetings. Frei-Pearson Decl. ¶ 23. The Class's response was overwhelmingly positive. *Id.* ¶ 28. The Class's reaction further indicates that the requested fees are appropriate.

**3. Class Counsel Litigated With Skill, Experience, And Efficiency.**

Plaintiffs' Counsel's have extensive experience prosecuting and resolving wage and hour actions and the quality of their representation in the instant action favor approving the requested fees. Class Counsel. *See* FBFG Firm Resume, Ex. 1 to Frei-Pearson Decl.; Frei-Pearson Decl. ¶ 29; Cook Aff.; Canzoneri Decl. ¶¶ 4-5 ; Gordon Decl. ¶¶ 5-14.[9] The Settlement Class Counsel negotiated is a highly favorable outcome for the Class, and is the direct result of Class Counsel's creativity, diligence, and skill. Class Counsel put the best interests of the Class ahead of its own, negotiating the most

U.S. Dist. LEXIS 166520 (D.N.J. Nov. 22, 2013) (awarding the requested attorneys' fees where the claims rate was 1.4%); *Touhey v. United States*, No. 08–1418, 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable); *Arthur v. SLM Corp.*, No. 10-198 (W.D. Wash. Aug. 8, 2012), ECF No. 249 at 2-3 (claims rate of approximately 2%). *Rolland v. Spark Energy, LLC,* No. 17-02680 (D.N.J. Dec. 6, 2022), ECF No. 197 (awarding requested attorneys' fees for a settlement with a 4.0% claims rate).

[9] Courts have recognized Class Counsel's vigorous advocacy on behalf of their clients. *See, e.g., Bellaspica v. PJPA*, No. 13-3014 (E.D. Pa. June 22, 2016), ECF No. 148 at 14 (describing Mr. Frei-Pearson as "a great example to the bar of what zealous advocacy really means" in approving a class and collective action settlement).

favorable settlement terms possible before turning to the question of attorneys' fees. Class Counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

**4. The Litigation Was Complex.**

The requested fee award is reasonable in light of the complexity and duration of the litigation. The Settlement was achieved only after the parties actively engaged informal discovery, mediation, and additional post-mediation settlement discussions. The Class itself is large, consisting of more than 3,000 Class members. In dollar terms, moreover, the magnitude of the litigation is equally substantial. As discussed above, each eligible claimant will receive an award in proportion to their approximate potential damages, a minimum of $50, as a result of Defendants' payment freeze practice following the Kronos Outage. By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and fully justifying the requested fee award. Class Counsel conducted a thorough investigation, prepared and served pleadings, responded to Defendants' motion to dismiss, conducted informal discovery, reviewed documents and information produced by Defendants, prepared for and attended mediation before Honorable Diane M. Welsh (ret.), engaged in additional settlement discussions, and positioned the case for settlement approval.

If not for the Settlement, Plaintiffs would have had to survive a motion to dismiss, and prevail at summary judgment, class certification, trial and on appeal. The magnitude and complexity of the litigation weigh heavily in favor of the requested fee award.

**5. The Litigation Was Risky.**

The First Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award. This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *16.

The history of complex litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal. *See, e.g., Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million and entering judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (overturning verdict in favor of plaintiff class based on subsequent change in law); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85554, *20 (S.D.N.Y. November 7, 2007) ("the risk of non-payment in com(plex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases).

The risks involved in this case are not hypothetical. Defendants in similar litigation involving the Kronos Outage have prevailed at motion to dismiss stage. *See Kroeck v. West Penn Allegheny Health System, Inc. et al.*, (W.D.Penn.), Case No. 22-00066, ECF. No. 36 (partially granting motion to dismiss for failure to state a claim). Here, the Parties fully briefed a motion to dismiss, ECF Nos. 56, 58, 64, and Judge Welsh provided guidance on the risks involved during mediation. Frei-Pearson Decl. ¶ 15. In light of similar uncertainties, courts have observed that "Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated." *Maley*, 186 F. Supp. 2d at 372 (class counsel not only undertook risks of litigation, "but advanced their own funds . . . and financed the litigation"). The requested fee award is entirely reasonable in light of the risks Class Counsel faced.

**6. Class Counsel Devoted Significant Time To The Litigation.**

Class Counsel devoted more than 933.61 hours to prosecuting and settling this action. Frei-Pearson Decl., ¶ 38; Cook Aff., Exhibit 1; Canzoneri Decl. ¶ 7;[10] Gordon Decl. ¶ 19. Before bringing the instant action, Class Counsel exhaustively investigated Plaintiff's claims. In addition, Class Counsel also engaged in arm's length negotiations with Defendants' counsel, and reached agreement on all material terms of the settlement before even attempting to negotiate a proposed fee. Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees. "The time and labor expended demonstrate the reasonableness of the requested fee award." *Ford v. Takeda Pharms. U.S.A., Inc.,* 2023 U.S. Dist. LEXIS 93286, *7 (D. Mass. Mar. 31, 2023). Class Counsel should be fairly compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class.

**7. The Awards In Similar Cases Favor Awarding The Requested Fees.**

Plaintiffs' Counsel is requesting $400,000 as attorneys' fees, which is 33.3% of the value of the settlement. On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the First Circuit. *See, e.g., In Re Relafen Antitrust Litig.*, 231 F.R.D. at 52 (awarding Class Counsel 33.3% of class fund of $67,000,000); *In re Stocker Yale, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 94004, at *20-21 (D.N.H. Dec. 18, 2007) (awarding 33% of gross settlement fund); *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987 (D. Mass. September 30, 2016) (awarding 33.3% of gross settlement fund).

Moreover, in similar settlements stemming from employers' failure to pay proper wages as a result of Kronos Outage caused by UKG Defendants, courts routinely approved similar or higher range of percentage fee awards. *See, e.g., Sanchez v. Stonegate Senior Living, LLC*, No. 22-00864, ECF

---

[10] Although Plaintiffs did not move to have Mr. Canzoneri appointed as class counsel, he has played an important role in this litigation and his law firm will receive a share of any fees awarded by the Court. Frei-Pearson Decl. ¶ 33.

No. 21 (N.D. Tex. Feb. 14, 2023) (approving settlement in FLSA collective action, including attorneys' fees of 40% of the gross settlement amount); *Woodruff v. Kaiser Aluminum Corp.*, No. 22-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (awarding 40% of the gross settlement amount in attorneys' fees and $5,252.70 in costs in a reversionary settlement for employees affected by the Kronos Outage); *Estevez v. Change Healthcare Inc.*, Case No 3:22-cv-327, ECF No. 34 (M.D. Tenn. June 13, 2023) (awarding 35.5% of the gross settlement amount in attorneys' fees in a reversionary settlement for employees affected by the Kronos Outage); *Anstead v. Ascension Health*, Case No. 22-2553, ECF No. 42 (N.D. Fla. March 27, 2023) (awarding 33.3% of the gross settlement amount in attorneys' fees in a reversionary settlement for employees affected by the Kronos Outage).

Furthermore, Courts routinely grants similar range of percentage fee awards in wage and hour cases. "[A] one-third contingent fee is common in class action employment and civil rights cases." *Purinton v. Moody's Co-Worker Owned, Inc.*, 2023 U.S. Dist. LEXIS 6949, *15 (D. Me. January 12, 2023). *See, e.g., Macone v. Pongratz*, No. 07-11360 (D. Mass. Sept. 16, 2008) (33.3% award in wage and hour settlement). Accordingly, the requested percentage of attorneys' fees here is fair and reasonable and should be awarded by the Court.

**8. Public Policy Considerations Support Awarding The Requested Fees.**

Public policy considerations weigh in favor of granting the fee award in class actions. "[A]ssuring payment of attorneys' fees promoted adequate representation of claimants[.]" *Clay v. Secretary of Health & Human Services*, 823 F.2d 679, 682 (1st Cir. 1987). These public policy benefits are particularly important in the wage and hour context, where individual claims may be relatively small but meaningful to those injured, and because the remedial purpose of the FLSA and state labor laws requires "adequate compensation for attorneys who protect those rights." "[T]he deterrent effect of class action lawsuits and, unique to the employment context, the desire to allow one or more courageous employees the ability to bring claims on behalf of other employees who are too intimidated

by the threat of retaliation and termination to exercise their rights under the Wage Act." *Machado v. System LLC*, 465 Mass. 508, 515, n.12, 989 N.E.2d 464 (2013).

In addition, this case is class action, and class actions are recognized as an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Class Counsel assumed substantial risk and cost in pursuing this action and successfully negotiated a settlement that provides significant monetary compensation for Class members. The Settlement provides substantial benefits to the public as well as Accordingly, public policy supports the requested fee award.

## V. THE EXPENSES PLAINTIFFS INCURRED WERE B REASONABLE AND NECESSARY TO ACHIEVE THE SETTLEMENT.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Similarly, the FLSA provides for the award of a "reasonable attorney's fee" and costs to a prevailing plaintiff. See 29 U.S.C. § 216(b). Under Massachusetts wage statutes, "[a] prevailing plaintiff 'shall also be awarded the costs of the litigation.'" (citing Mass. Gen. Laws ch. 149, § 150). *Gonpo v. Sonam's Stonewalls & Art, LLC,* 2021 U.S. Dist. LEXIS 88853, *18 (D. Mass. April 1, 2021).

Class Counsel incurred $18,688.42 in litigation expenses, all on a contingency basis. Frei-Pearson Decl. ¶ 47; Gordon Decl. ¶ 29 . Those expenses include filing fees, transcription fees, mailing costs, process server fees, and mediation fees. These costs were reasonable and necessary and should be reimbursed in full. See 29 U.S.C. § 216(b) (entitling plaintiff's counsel to "costs of the action"). *See also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 125041, *25 (D. Mass. September 8, 2014) (awarding reimbursement of $325,000 in out-of-pocket expenses in a class settlement) (citing *In re Fidelity/Micron Securities Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *Barr v. Drizly, LLC, 2021 U.S. Dist. LEXIS 217158*, ECF. No. 72 (D. Mass. November 4, 2021) (awarding attorneys' fees of $1,186,967.05 and expenses of $133,032.95 in a class settlement).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for service awards, attorneys' fees, and costs in the amounts requested.

Dated: White Plains, New York
August 18, 2023

Respectfully submitted,

By: *__/s/ Jeremiah Frei-Pearson__*
Jeremiah Frei-Pearson (*Pro Hac Vice*)
D. Greg Blankinship (BBO# 655430)
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
One North Broadway
Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
jfrei-pearson@fbfglaw.com
gblankinship@fbfglaw.com

Kathy Jo Cook (BBO # 631389)
**SHEFF & COOK, LLC**
10 Tremont Street
7th Floor
Boston, MA 02108
kjcook@kjclawfirm.com

Philip J. Gordon (BBO# 630989)
Kristen M. Hurley (BBO# 658237)
**GORDON LAW GROUP, LLP**
585 Boylston Street
Boston, MA 02116
pgordon@gordonllp.com
khurley@gordonllp.com

*Attorneys for Plaintiffs and the Collective and Class*