UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIELLE PALLOTTA and CHERYL LAFLAMME, on behalf themselves and all others similarly situated,<br><br>        Plaintiffs,<br>  v.<br><br>UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CENTER, KRONOS INCORPORATED, and UKG INC.,<br><br>        Defendants. | Civil Action No. 4:22-cv-10361-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF A SETTLEMENT CLASS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

    I.     Background of Litigation ....................................................................... 2

    II.    Summary of Proposed Settlement .......................................................... 3

ARGUMENT ..................................................................................................................... 5

    I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. ................ 5

        A.    The Settlement is Substantively Fair. ............................................ 5

            1.    The Action Is Complex And
                 Further Litigation Would Be Expensive And Lengthy. .................. 6

            2.    The Reaction Of The Class Was Overwhelmingly Positive. .......... 7

            3.    The Current Stage Of The Action
                 And The Discovery That Has Occurred Favor Final Approval ...... 9

            4.    Plaintiffs Face Substantial Risks In
                 E stablishing Liability And Damages. ........................................ 10

            5.    Maintaining The Class Action
                 Through Trial May Be Challenging. ........................................... 11

            6.    Defendants Ability To
                 Withstand A Greater Judgment Is Neutral ................................. 12

            7.    The Settlement Amounts Are Reasonable
                 In Light Of The Best Possible Recovery And
                 In Light Of All The Attendant Risks Of Litigation. .................... 12

        B.    The Settlement is procedurally fair. .............................................. 14

            1.    The settlement Was Reached After Arm's-Length Negotiations. 14

            2.    The Direct Notice To Class Members ........................................ 15

    II.    APPROVAL OF THE FLSA SETTLEMENT
         IS APPROPRIATE PURSUANT TO 29 U.S.C. § 216(b). ................................ 16

    III.   THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS. . 18

CONCLUSION ................................................................................................................ 18

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Anderson v. Team Prior, Inc.*,
   No. 19-00452, 2022 U.S. Dist. LEXIS 196144 (D. Mass. 2022) ..................................... 16, 17

*Brayak v. New Bos. Pie, Inc.*,
   292 F. Supp. 3d 520 (D. Mass. 2017) .................................................................................... 16

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................................ 10, 15, 16

*City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*,
   100 F.3d 1041 (1st Cir. 1996) .............................................................................................. 14

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................................. 13

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974) ................................................................................................... 7

*Gulbankian v. MW Mfrs., Inc.*,
   No. 10-10392, 2014 U.S. Dist. LEXIS 177668 (D. Mass. 2014) ................................ 7, 14, 15

*Hamilton v. SunTrust Mortg. Inc.*,
   No. 13-60749, 2014 U.S. Dist. LEXIS 154762 (S.D. Fla. 2014) ............................................ 9

*Hill v. State St. Corp.*,
   No. 09-12146, 2014 U.S. Dist. LEXIS 179702 (D. Mass. 2014) ............................ 6, 7, 12, 13

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ................................................................................. 9, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ....................................................................................... 15, 16

*In re First Commodity Corp. Customer Accounts Litigation*,
   119 F.R.D. 301 (D. Mass. 1987) ..................................................................................... 11, 12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3rd. Cir. 1995) ................................................................................................ 13

*In re Lupron Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) .................................................................................. 5, 7, 8, 13

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ................................................................. 8, 11, 12

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
    No. 06-5173, 2008 U.S. Dist. LEXIS 36093 (N.Y.S.D. 2008) ............................. 12

*In re Stockeryale, Inc.*,
    No. 05-00177, 2007 U.S. Dist. LEXIS 94004 (D.N.H. 2007) ................................. 9

*In re Sturm*,
    No. 09-1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. 2012) ............................ 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................... 5

*Kane v. Gage Merchan. Serv., Inc.*,
    138 F. Supp. 2d 212 (D. Mass. 2001) .................................................................. 17

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
    No. 17-10219, 2017 U.S. Dist. LEXIS 87928 (D. Mass. 2017) ............................ 14

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d (S.D.N.Y. 2002) .......................................................................... 7

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) ................................................................... 5

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) .............................................................................. 7

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................. 8

*Poertner v. Gillette Co.*,
    618 Fed. Appx. 624 (11th Cir. 2015) .................................................................... 8

*Prescott v. Prudential Ins. Co.*,
    729 F. Supp. 2d 357 (D. Me. 2010) ..................................................................... 17

*Reyes v. City of Rye*,
    No. 16-13561, 2017 U.S. Dist. LEXIS 2017 (S.D.N.Y. Jun. 30, 2017) ................ 12

*Roberts v. TJX Cos.*,
    2016 U.S. Dist. LEXIS 136987 (D. Mass. 2016) ......................................... *passim*

*Robinson v. Nat'l Student Clearinghouse*,
 14 F.4th 56 (1st Cir. 2021) ........................................................................... 14

*Rolland v. Cellucci*,
 191 F.R.D. 3 (D. Mass. 2000) ................................................................... 7, 15

*Klapatch v. BHI Energy I Power Servs., LLC*
 No. 18-11581, 2019 U.S. Dist. LEXIS 28134 ............................................... 17

*Sabol v. Hydroxatone LLC*,
 No. 11-04586, 2013 U.S. Dist. LEXIS 166520 (D.N.J. 2013) ............................ 8

*Touhey v. United States, No. 08–1418*,
 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. 2011) ....................................... 8, 9

*Wise v. Patriot Resorts Corp.*
 No. 04-30091, 2006 U.S. Dist. LEXIS 97992 (D. Mass. Feb. 15, 2006) ............... 17

**Statutes**

29 U.S.C. § 216 ............................................................................................ 16, 18

29 U.S.C. §§ 201 ........................................................................................... 2, 3, 4

**Other**

Federal Rule of Civil Procedure 23 ...................................................... *passim*

iv

Danielle Pallotta, Cheryl LaFlamme, Sandra Bravo, Melissa Lavin, Michelle Lemieux, Catherine Mysliewic, and Tania Ward (collectively, "Plaintiffs") submit this application for final approval of the proposed settlement (the "Settlement") of this action (the "Action") with Defendants UMass Memorial Medical Center, Inc. and UMass Memorial Health Care, Inc. (collectively the "UMass Defendants") (together, the "Settling Parties"), and certification of settlement class.

## **INTRODUCTION**

On May 25, 2023, this Court entered an order preliminarily approving the Settlement and requiring that notice be provided to class members. ECF No. 83. Since receiving notice, the Class has had an excellent reaction to the Settlement, with not a single Class member objecting and just one class member opting out. The Class' positive reaction to the Settlement is unsurprising, as this Settlement ensures that participating Class members will receive more money than they would have received if Defendants Kronos Incorporated and UKG, Inc. (collectively, the "UKG Defendants") had not allowed criminals to obtain Class members' confidential information ("Kronos Outage") and caused the UMass Defendants to fail to timely pay Class members.

Under the Settlement, which was reached after mediation conducted by the Honorable Diane M. Welsh (ret.), the UMass Defendants will provide a settlement fund in the value of $1,200,000 (the "Settlement Fund"), *see* Settlement Agreement ¶ V.a, which shall be distributed to all Class members who submit a valid and timely claim through a simple claims process, pursuant to the Settlement Agreement. *Id.* ¶ V.c.(5). Class members are entitled to an average award of $374.77, with all Class members entitled to a minimum of $50. Settlement Agreement ¶ V.c.(5). Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.)" ¶ 16.

Significantly, this Settlement is substantially stronger than similar settlements stemming from many employers' failure to pay proper wages as a result the Kronos Outage. *See Woodruff v. Kaiser Aluminum Corp.,* No. 22-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (approving a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $205 and a minimum recovery of $40); *Marshall v. Coca-Cola Consolidated Inc.*, Case No. 22-00214, ECF. No. 22 (W.D.N.C. June 27, 2023) (preliminarily approving a settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $244 and a minimum recovery of $40); *Estevez v. Change Healthcare Inc.,* Case No 3:22-cv-327, ECF No. 34 (M.D.Tenn. June 13, 2023) (approving a reversionary settlement for employees affected by the Kronos Outage where participating class members had an average recovery of $343.70 and a minimum recovery of $50).

Accordingly, Plaintiffs request that the Court enter an order finally certifying the proposed Class and approving the Settlement.

## STATEMENT OF FACTS

### I.    Background of Litigation

On or about January 19, 2022, Melissa Lavin and Michelle Lemieux, represented by the Gordon Law Group, filed a lawsuit in state court against UMass Defendants for underpayments resulting from the Kronos Outage. Frei-Pearson Decl. ¶ 5. On or about March 9, 2022, Plaintiffs Danielle Pallotta and Cheryl LaFlamme filed a putative class and collective action in this Court under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the Massachusetts Wage Act seeking redress for the damages they and their colleagues suffered due to the Kronos Outage. Complaint, ECF No. 1; see also Am. Compl.

On or about March 15, 2022, Plaintiffs filed an Amended Complaint. ECF. No. 8. On or about October 19, 2022, Defendant Kronos Incorporated moved to dismiss the Amended Complaint, for failure to state a claim. ECF. Nos. 48-49. The motion to dismiss was fully briefed. Frei-Pearson Decl. ¶ 9. On or about the same day, Defendant University of Massachusetts Memorial Medical Center answered the Amended Complaint. ECF. No. 19.

The Settling Parties engaged in preliminary discovery. Frei-Pearson Decl. ¶ 10. After each side was in a position to evaluate the merits, strengths and weaknesses of the claims or defenses, the Settling Parties agreed to engage in arms-length negotiations, concluding in a mediation with an experienced mediator, Ret. Judge Diane Welsh, of JAMS. *Id* ¶ 12. On May 25, 2023, this Court preliminarily approved the Settlement and ordered CAC Service Group, LLC (the "Administrator") to disseminate a notice by first class mail and by email to known Class members, and a reminder notice via postcard. ECF No. 83.

## II. Summary of Proposed Settlement

Under the Settlement, the UMass Defendants will fund an all-in payment of $1.2 Million, that will fund direct payments to Class and Collective members who opt-in (collectively, the "Claimants"), attorneys' fees and litigation costs, settlement administration costs, and service award payments. Settlement Agreement, ¶ V.a. The FLSA Collective consists of all hourly employees of UMass Defendants, who, according to Defendants' records, did not receive timely payment of wages as a result of the Kronos Outage, who consent to join this settlement by completing and returning a valid and timely FLSA Consent Form. *Id.* ¶ II.c. The Massachusetts Wage Act Class consists of all hourly employees of UMass Defendants, who, according to Defendants' records, did not receive timely payment of wages as a result of the Kronos Outage.

Each Claimant shall receive a payment in proportion to their approximate potential damages, with a minimum payment of $50.00. *Id.*, ¶ V.c.(5). The average payment to Claimants is $374.77. Frei-Pearson Decl. ¶ 16. Unclaimed funds will revert to the UMass Defendants. Settlement Agreement, ¶ V.c.(6). Class members participating in this settlement will, ultimately, receive more money as liquidated damages than they would have received if there had been no wage and hour violations. *Id*. ¶ 20. The FLSA Collective and the Massachusetts Wage Act Class (collectively, the "Settlement Class") contain approximately 3,202 members who are entitled to receive payment under the Settlement. Frei-Pearson Decl. ¶ 17.

The Administrator sent the notice packet to Class members by first class mail and email on June 8, 2023 (the "Notice"), and a two reminder notices via postcard to Class members who had not made a claim.[1] *Id*. ¶ 20. Plaintiffs and Class Counsel have worked diligently to inform Class members about the settlement and have regularly been in touch with representatives of the Massachusetts Nurse's Association ("MNA"), which represents the vast majority of the Class. *Id*. ¶ 23. Class members have until September 6, 2023 to participate in the Settlement or to opt out or object. *Id*. ¶ 25. As of September 1, 2023, approximately 31% of Class members have participated.[2] *Id*. ¶ 26. As of the same date, no Class member has objected to the settlement and only one Class member has opted out of the Settlement.

---

[1] After Plaintiffs identified an inaccurate date in the initial reminder notice, the Settling Parties agreed to send a second reminder notice that corrected the inaccurate date. Frei-Pearson Decl. ¶ 21.
[2] The unclaimed or unawarded settlement funds shall remain the property of the UMass Defendants. Settlement Agreement, ¶ V.c.6.

# ARGUMENT

## I.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A.  The Settlement is Substantively Fair.

As courts in this circuit have recognized, "the law favors class action settlements." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005).  Moreover, "there is a presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery." *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987, *18 (D. Mass. 2016) (Burroughs, J.).

Federal Rule of Civil Procedure 23(e) requires that a class action settlement be "fair, reasonable and adequate" in order to merit final approval.  "The First Circuit has not established a fixed test for evaluating the fairness of a settlement." *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280 (D. Mass. 2009) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007)).  Accordingly, courts within the First Circuit look to factors considered by other Circuits.  In *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, the Court recognized the *Grinnell* factors:

> In this Circuit, many courts have relied on the factors set forth by the Second Circuit to determine the fairness of a settlement:
> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the  risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* 280 – 281 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  *See also In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005) (noting

that *Grinnell* has supplied the "most commonly referenced factors" and proceeding to apply them). The *Grinnell* factors militate in granting final approval of the Settlement.

### 1. The Action Is Complex And Further Litigation Would Be Expensive And Lengthy.

The Settlement Agreement provides substantial monetary benefits to the proposed Settlement Class while avoiding the significant expenses, delays, and risks attendant to discovery and motion practice related to summary judgment and class certification. In reviewing a wage and hour class settlement under the FLSA and state law, this court finds this type of cases are "heavily fact and time-intensive". *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987, *21. The Settlement was achieved only after the parties actively engaged informal discovery, mediation, and additional post-mediation settlement discussions.

In absence of the Settlement, continued litigation would result in additional factual discovery, time-consuming depositions, extensive motion practice, including motions to dismiss, for class certification, and for summary judgment. Such motion practice would prove extremely time-consuming and expensive. Also, if the Action survives summary judgment, the Settling Parties will then engage in a fact-intensive trial, resulting in further delay and expense. In reviewing this factor, this Court finds, "[t]he parties' proposed Settlement avoids the significant time and expense that they would incur preparing this case for trial on the merits." *Roberts v. TJX Cos.*, 2016 U.S. Dist. LEXIS 136987, *21-22.

Moreover, any judgment would likely be appealed, extending the costs and duration of the Action. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to Class members, providing important relief. *See Hill v. State St. Corp.,* 2014 U.S. Dist. LEXIS 179702, *19 (D. Mass. 2014) ("The complexity of this case and the expense and delay that would result if this case were litigated through further motion practice, trial and appeals strongly

6

support approval of the Settlement."). "When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation,' there are clearly strong arguments for approving a settlement." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) (citing *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974)). Thus, this factor weighs in favor of approving the Settlement.

### 2.    The Reaction Of The Class Was Overwhelmingly Positive.

Courts give "great weight" to Class members' reaction to a class action settlement. *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d (S.D.N.Y. 2002); *see also In re Relafen Antitrust Litig*., 231 F.R.D. at *80 (D. Mass. 2005). Here, 3,202 notices were sent to Class members by First Class mail and email on June 8, 2023, and reminder notices have been sent via postcard to Class members who had not made a claim. Frei-Pearson Decl. ¶ 20. Class members can also submit claim forms through the Administrator's website. Class members have until September 6, 2023 to participate in the Settlement, or to opt out or object.

As of September 1, 2023, only one Class member has requested exclusion from the Settlement Class, and there has not been a single objection to the Settlement. Frei-Pearson Decl. ¶ 27. This absence of a significant number of opt-outs and of any objections weighs heavily in favor of approval. *See Greenspun v. Bogan*, 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a settlement]."). *See also Gulbankian v. MW Mfrs., Inc.,* 2014 U.S. Dist. LEXIS 177668, *8 (D. Mass. 2014) (citing *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005)) ("Reaction to a settlement is positive when the number of objectors is minimal compared with the number of claimants, provided notice effectively reached absent class members."). Moreover, Plaintiffs and Class Counsel have worked diligently to inform Class members about the

settlement.  Frei-Pearson Decl.  ¶ 22.  Class Counsel fielded numerous questions from Class members.  *Id.*  Class Counsel has also been in regular contact with the MNA, and has answered questions and provided information about the settlement to union representatives.  *Id.* ¶ 23.  The Notice effectively reached Class members.  As of September 1, 2023, with no objection and only one opt-out, the Class's response was overwhelmingly positive.  *Id.* ¶ 27.  *Compare, In re Relafen Antitrust Litig.*, 231 F.R.D. 52, at 72 (D. Mass. 2005) (reaction to settlement was positive with 5,489 claims, 140 opt-outs, and 10 objections); *Lupron*, 228 F.R.D. at 96 (reaction to settlement was positive with 10,614 consumer claims, 49 opt-outs, and 10 objectors).

As of September 1, 2023, 993 individuals, approximately 31% of the Class submitted a claim to participate in the Settlement.  Frei-Pearson Decl. ¶ 26.  This settlement produced a substantial claim submission rate.  Indeed, courts have approved claims-made class settlements where the claims rate was significantly lower. *See, e.g.*, *Poertner v. Gillette Co.*, 618 Fed. Appx. 624,  625-26 (11th Cir. 2015) (approving 7.26 million-member settlement class when just 55,346 -- less than 1% -- filed claims);  *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (approving 836,750-member settlement class when 5,489 -- less than 1% -- filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 -- approximately 1.1% -- filed claims); *Sabol v. Hydroxatone LLC*, No. 11-04586, 2013 U.S. Dist. LEXIS 166520 (D.N.J. 2013) (approving class settlement where the claims rate was 1.4%); *Arthur v. SLM Corp.*, No. 10-198 (W.D. Wash. Aug. 8, 2012), ECF No. 249 at 2-3 (approving class settlement where the claims rate of approximately 2%); *Touhey v. United States*, No. 08–1418, 2011 WL 3179036, at *7–8 (C.D. Cal. 2011) (finding a 2% response rate acceptable -- 38 responses out of 1,875 notices mailed -- where there were no objections and the overall recovery was fair and reasonable); *Rolland v. Spark Energy, LLC,* No.

17-02680 (D.N.J. Dec. 6, 2022), ECF No. 197 (approving class settlement with a 4.0% claims rate).

Although courts look to claims rate to gauge class reaction to a proposed settlement, "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, *15 (S.D. Fla. 2014). See also *TJX,* 2016 U.S. Dist. LEXIS 136987, *22 ("[T]hose class members who did respond have reacted positively to the proposed Settlement. The parties have received no objections to the Settlement, and only 3 class members have asked to be excluded."). Here, the participating Class members will receive more money than they would have received if there had been no wage and hour violations.

The small number of opt-outs and absence of objections, coupled with a substantial claims rate, weighs in favor of the Settlement.

### 3.    The Current Stage Of The Action And The Discovery That Has Occurred Favor Final Approval.

The Settlement was achieved at a time when the parties and their counsel were sufficiently knowledgeable about the strengths and weaknesses of their claims and defenses that they were able to make well-informed decisions regarding the Settlement. *See In re Stockeryale, Inc*., 2007 U.S. Dist. LEXIS 94004, *9 (D.N.H. 2007) (approving settlement where "Class counsel had the benefit of information obtained through document discovery and its extensive own investigation" and "the settlement agreement was reached after significant negotiations between the parties before an experienced mediator"); *see also Hochstadt v. Boston Sci. Corp*., 708 F. Supp. 2d 95, 107 (D. Mass. 2010) ("[T]he applicable standard, which does not require that discovery be

completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement.").

Plaintiffs' counsel conducted a thorough investigation of Plaintiffs' claims, and Defendants' counsel did so as well. Before the Settlement, the parties fully briefed a motion to dismiss and engaged in informal discovery. Furthermore, prior to the mediation, the parties were familiar with the law surrounding Defendants' anticipated defenses to this action. The Parties prepared for and attended mediation before Honorable Diane M. Welsh (ret.) and engaged in additional settlement discussions. Thus, the stage of the proceedings supports approval of the Settlement.

4.      **Plaintiffs Face Substantial Risks In Establishing Liability And Damages.**

While Plaintiffs are confident in their ability to prove their cases, substantial hurdles in establishing liability and damages remain. *See Bussie v. Allmerica Fin. Corp.,* 50 F. Supp. 2d 59, 76 (D. Mass. 1999) ("[T]he reality that the Class would encounter significant, and potentially insurmountable obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement."). Plaintiffs and the Class brought wage and hour claims under the FLSA and Massachusetts Wage Act alleging that Defendants failed to pay them proper wages, including overtime wages, in a timely fashion. However, pursuing this claim is risky. The existence and amount of damages, depend on Plaintiffs' ability to prove Defendants' willfulness and lack of good faith. However, proving such against the UMass Defendants would be challenging because: (1) the Kronos Outage, which rendered the payroll services unusable, resulted from the UKG Defendants' negligence; and (2) UMass Defendants had repaid employees for all of the improper payments following the Kronos Outage. The UMass Defendants have indicated that they would raise substantial defenses under the Massachusetts Wage Act ("MWA"),

including that: (1) the MWA exempts from liability certain hospitals in Massachusetts who either operate as public charities or receive funding from the state of Massachusetts or a Massachusetts' town; and (2) the MWA claim is preempted by federal law because it requires interpretation of the parties' collective bargaining agreement.  Frei-Pearson Decl. ¶ 11.

While Plaintiffs are confident that they would overcome these arguments, the Settlement Agreement nonetheless avoids the risks inherent in further litigation, and therefore this factor weighs in favor of final approval.  Because the potential benefits of a favorable result at trial are discounted based on the risks associated with continued litigation, the proposed Settlement is well within the range of reasonableness.  As Judge Young noted in granting final approval in *In re Relafen,* 231 F.R.D. at 74, "[a]lthough fully litigating the claims through trial could possibly result in a higher recovery, the settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery."

### 5. Maintaining The Class Action Through Trial May Be Challenging.

Plaintiffs are confident in their ability to maintain this action as a class through trial.  Nonetheless, they recognize that there are substantial hurdles in being able to do so.  "There are numerous stages during the litigation at which certification could fail.  The Plaintiffs first have to successfully move to certify the class (conditionally in the case of FLSA) and would then have to survive a motion to decertify by Defendants."  *TJX,* 2016 U.S. Dist. LEXIS 136987, *24-26. Defendants may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Settlement eliminates this risk, expense, and delay. *See In re First Commodity Corp. Customer Accounts Litigation*, 119 F.R.D. 301, 314 (D. Mass. 1987) ("The proposed settlement, if finally approved, will save costly and extensive litigation . . . eliminate uncertainty concerning whether

any or all of the plaintiffs would prevail if the class action issues were litigated and whether they would prevail on the merits."). This factor also favors final approval.

### 6.  Defendants Ability To Withstand A Greater Judgment Is Neutral.

"This 'defendant oriented' consideration, is largely neutral as this is, evidently, a 'defendant[] with classic deep pockets.'" *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 73 (citing *In re Lupron*, 228 F.R.D. at *20). *See also Roberts v. TJX Cos*., 2016 U.S. Dist. LEXIS 136987, *27 ("the seventh [*Grinnell*] factor on its own appears to be neutral"); *Hill v. State St. Corp.*, 2014 U.S. Dist. LEXIS 179702, *25 ("This factor is neutral with respect to approval of the Settlement. . . a defendant is not required to empty its coffers before a settlement can be found adequate") (citing *In re Sturm*, 2012 U.S. Dist. LEXIS 116930 (D. Conn. 2012)). Here, the Settlement reasonably provides Class members with substantial monetary benefits. Participating Class members will ultimately receive more money than they would have received if there had been no wage and hour violations. Indeed, when parties "negotiate[] heavily over the settlement amount taking into account defendant's ability to pay a settlement that would compensate the class for their alleged unpaid wages. . . [e]ven if the defendant can withstand a greater judgement… this factor does not hinder granting final approval." *Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 2017, at *17 (S.D.N.Y. Jun. 30, 2017). Thus, "[w]here, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *In re Sony SXRD Rear Projection TV Class Action Litig*., 2008 U.S. Dist. LEXIS 36093, *23-24 (N.Y.S.D. 2008).

### 7.  The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.

In assessing the fairness, reasonableness and adequacy of a settlement, courts balance the immediacy and certainty of recovery for a class against not only the result that could be achieved

through continued litigation, but also the risks associated with such litigation.  *See Hill v. State St. Corp.,* 2014 U.S. Dist. LEXIS 179702, *25-26 ("[T]he court considers the reasonableness of the settlement in light of the possible recovery in the litigation and risks of the litigation. In analyzing these factors, the issue for the court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. The court 'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable[.]'" (quoting *Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974)).

The $1.2 Millon settlement amount represents a good value given the attendant risks of litigation discussed above, weighs in favor of approving of the Settlement.  The $1.2 Millon settlement amount represents approximately 40% of the UMass Defendants' liability.  Under the Settlement, Class members are entitled to an average award of $374.77, with all Class members entitled to a minimum of $50.  Frei-Pearson Decl. ¶ 16.  Participating Class members in this settlement will, ultimately, receive more money as liquidated damages than they would have received if there had been no wage and hour violations.  *Id.* ¶ 18.  Given the obstacles and uncertainties attendant to this Action, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other possibility, if Defendants were to succeed at trial, little or no recovery.  *See In re Lupron*, 228 F.R.D. 75, 97 ("In applying this test of reasonableness, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3rd. Cir. 1995)).  Therefore, these factors militate in favor of approving the Settlement.

**B.    The Settlement is procedurally fair.**

    **1.    The settlement Was Reached After Arm's-Length Negotiations.**

"When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City Pshp. Co. v. Atlantic Acquisition Ltd. Pshp.*, 100 F.3d 1041, 1043 (1st Cir. 1996). *See also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 58-59 (1st Cir. 2021) (affirming decision granting final approval of the class settlement and the district court's finding that the "parties negotiated at arm's length" because the parties conducted a mediation before the Honorable Diane M. Welsh (ret.)).

This Settlement was reached as a result of arm's length negotiation following motion practice, informal discovery, a lengthy mediation session before a respected mediator and former judge, the Honorable Diane M. Welsh (Ret.), and additional post-mediation settlement discussions. The parties exchanged relevant information to enable an accurate assessment of the merits of Plaintiffs' claims. Plaintiffs have fully considered the merits and potential value of their claims and determined that the proposed settlement provides a reasonable and fair resolution. This is a factor favoring approval of the Settlement. *See Lauture v. A.C. Moore Arts & Crafts, Inc.,* 2017 U.S. Dist. LEXIS 87928, *2 (D. Mass. 2017) (approving a settlement reached after attending a private mediation session supervised by Judge Welsh, finding "[t]he settlement followed adequate informal discovery and arm's-length negotiations with the assistance of a mediator, a former Magistrate Judge from the Eastern District of Pennsylvania, the Honorable Diane Welsh."); *Gulbankian v. MW Mfrs., Inc.,* 2014 U.S. Dist. LEXIS 177668, *19 (D. Mass. 2014) (finding the settlement to be fair, reasonable, and adequate because, among other reasons, "[t]he negotiations leading to this Agreement were conducted diligently and at arms length with the facilitation of a respected and experienced neutral mediator.").

Plaintiffs' Counsel include highly skilled advocates who are experienced in complex class action litigation. *See* Frei-Pearson Decl. ¶ 31. Plaintiffs' counsel were well positioned to evaluate the strengths and weaknesses of Plaintiffs' claims owing to the extensive informal discovery in the Action and their extensive experience and knowledge in the area of complex and class action litigation. *Id.* ¶ 32. Defendants are also represented by highly experienced attorneys. *Id.* ¶ 33. Thus, the presumption of reasonableness is applicable and supports a finding approving the settlement. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.") (citing *Bussie,* 50 F. Supp. 2d at 72).

### 2. The Direct Notice To Class Members Satisfies Due Process And Is Reasonable.

When a court certifies a class under Rule 23(b)(3), notice must be served on all class members who can be identified through reasonable efforts. Fed. R. Civ. P. 23(c)(2)(B). For settlements, Rule 23(e) also instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Such notice "must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003). The notices in this case met all of the above requirements.

This Court preliminarily approved the Settlement and ordered the Administrator to disseminate the Notice to Class members. ECF No. 83. On June 8, 2023, the Administrator sent the Notice by first class mail and email to all Class members, and on July 23, 2023, a reminder

notice via postcard to Class members who had not made a claim. The Notice advised Class members of the essential terms of the Settlement, set forth the procedure for completing the claim form, objecting to the Settlement or opting out of the Settlement. Thus, the Notice provided the necessary information for Class members to make an informed decision regarding the proposed Settlement and was the best notice practicable under the circumstances in compliance with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, and due process. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B). See *Bussie,* 50 F. Supp. 2d 59, 67 (finding notice by first class mail "is the best practicable notice under the circumstances"). *See also Compact Disc,* 216 F.R.D at 218. (finding "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances.").

## II.   APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE PURSUANT TO 29 U.S.C. § 216(b).

Plaintiffs also request that the Court approve the settlement of their FLSA claims. Plaintiffs have brought their FLSA claims as a collective action. 29 U.S.C. § 216(b) provides that:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"Unlike a Rule 23 class action, collective actions under the FLSA 'require similarly situated employees to affirmatively opt-in and be bound by any judgment.'" *Anderson v. Team Prior, Inc.*, 2022 U.S. Dist. LEXIS 196144, *9 (D. Mass. 2022) (quoting *Brayak v. New Bos. Pie, Inc.,* 292 F. Supp. 3d 520, 523 (D. Mass. 2017)). Thus, the FLSA "allows plaintiffs to proceed

collectively based on a lesser showing than that required by Rule 23." *Klapatch v. BHI Energy I Power Servs., LLC*, 2019 U.S. Dist. LEXIS 28134, at \*3 (D. Mass. 2019) (quoting *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 359 (D. Me. 2010)).  Plaintiffs need only demonstrate that they "and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." *Id.* at \*4 (quoting *Prescott*, 729 F. Supp. 2d at 364).

In determining whether Plaintiffs are similarly situated, courts in this circuit have adopted different approaches. "The first is a 'two-step' approach involving notification to potential class members of the putative collective action, followed by a final determination as to whether the parties opting in are 'similarly situated' once discovery is complete.  Alternatively, the court may simply adopt an approach coextensive with the requirements of Fed. R. Civ. P. 23." *Wise v. Patriot Resorts Corp.,* 2006 U.S. Dist. LEXIS 97992, \*3 (D. Mass. 2006) (citing *Kane v. Gage Merchan. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).

Under the "two-step" approach, the Court conditionally and preliminarily certified for settlement purpose only the FLSA Collective in its Preliminary Approval Order, meets the first step.  "In determining whether opt-in parties are 'similarly situated,' courts generally focus on the following factors: (1) the employment settings . . . (2) the various defenses available to Defendant that appear to be uniquely specific to individual plaintiffs; and (3) fairness and procedural considerations." *Id.*, \*5.  "Generally, employees are 'similarly situated' when they have similar (not identical) job duties and pay provisions, and are 'victims of a common policy or plan that violated the law.'"  *Team Prior, Inc*., 2022 U.S. Dist. LEXIS 196144, \*9 (quoting *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (citations omitted)).

Here, the Collective is similarly situated because all hourly employees at UMass were subject to the same uniform policy: UMass instituted a payment freeze on December 13, 2021,

which set the wages that Plaintiffs and Class members received based upon the hours they worked in the pay period prior to December 13, 2021. Frei-Pearson Decl. ¶ 15. This uniform policy operated in the same manner on all hourly employees at UMass and is suitable for collective treatment. Notice and reminder postcard notices have been sent to the Collective members as described above. The notice procedure is fair and effective. Class members have until September 6, 2023 to participate in or object to the Settlement. As of September 1, 2023, no individual has objected to the settlement. Frei-Pearson Decl. ¶ 27.

Given the foregoing, for purposes of settlement, this matter meets the requirements for collective action treatment and approval of the settlement is appropriate pursuant to 29 U.S.C. § 216(b).

## III.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS.

Plaintiffs moved to preliminarily certify the Class for settlement purposes, and the Court granted the motion on May 25, 2023. *See* ECF No. 83. For the reasons stated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 72), this Court should certify the Class.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Plaintiffs respectfully request the Court fully and finally approve the Settlement and enter the proposed Final Approval Order, attached as Exhibit 1 to Frei-Pearson Decl.

Dated:    White Plains, New York

        September 1, 2023

                                    Respectfully submitted,

                                    By: */s/ Jeremiah Frei-Pearson*
                                    Jeremiah Frei-Pearson (*Pro Hac Vice*)
                                    D. Greg Blankinship (BBO# 655430)
                                    **FINKELSTEIN, BLANKINSHIP,**
                                    **FREI-PEARSON & GARBER, LLP**
                                    One North Broadway
                                    Suite 900
                                    White Plains, New York 10601
                                    Tel: (914) 298-3281
                                    jfrei-pearson@fbfglaw.com
                                    gblankinship@fbfglaw.com

                                    Kathy Jo Cook (BBO # 631389)
                                    **SHEFF & COOK, LLC**
                                    10 Tremont Street
                                    7th Floor
                                    Boston, MA 02108
                                    kjcook@kjclawfirm.com

                                    Philip J. Gordon (BBO# 630989)
                                    Kristen M. Hurley (BBO# 658237)
                                    **GORDON LAW GROUP, LLP**
                                    585 Boylston Street
                                    Boston, MA 02116
                                    pgordon@gordonllp.com
                                    khurley@gordonllp.com

                                    *Attorneys for Plaintiffs and the Collective*
                                    *and Class*